EDWARD HINES YELLOW PINE TRUSTEES ET AL. *v.* UNITED STATES, INTERSTATE COMMERCE COMMISSION, AND AMERICAN WHOLESALE LUMBER ASSOCIATION.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 91.   Argued October 18, 19, 1923.—Decided November 12, 1923.

1. To maintain a suit to set aside an order of the Interstate Commerce Commission upon the ground that it exceeded the powers of the Commission, it is not essential that a plaintiff should have been a party to the proceedings before the Commission in which the order was made. P. 147.
2. But to maintain such a suit the plaintiff must show that the order alleged to be void subjects him to actual or threatened legal injury. P. 148.
3. Where the interest shown by a group of lumber manufacturers in attacking an order of the Commission, which abolished a penalty charge on lumber held at reconsignment points, was in the handicap which the charge imposed on competing jobbers, and in the possibility that its removal might divert the cars of carriers, including those of their own projected railroad, from transportation to storage uses,—*held,* that they had no standing to sue to set the order aside,

on the grounds that it exceeded the power of the Commission and violated the rights of carriers under the Fifth Amendment. *Id.* Affirmed.

APPEAL from a decree of the District Court dismissing the bill in a suit to set aside an order of the Interstate Commerce Commission.

*Mr. William S. Bennet,* with whom *Mr. Homer J. Smith* and *Mr. Edward W. McGrew* were on the brief, for appellants.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, for the United States.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Joseph E. Davies,* with whom *Mr. Franklin D. Jones* and *Mr. Raymond N. Beebe* were on the brief, for American Wholesale Lumber Association, appellee, by special leave of Court.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit was brought against the United States by an Illinois lumber concern in a federal court for Illinois to set aside as void an order entered by the Interstate Commerce Commission against carriers on February 11, 1922. The Commission and the American Wholesale Lumber Association—the petitioner in the proceedings before it—intervened in this suit as defendants. No carrier intervened. The plaintiffs had not been parties to the proceedings before the Commission, nor were they named in the order assailed. The United States moved to dismiss the bill on the ground that the plaintiffs had not shown such an interest in the subject matter as would entitle them to sue; and also for want of equity. The case was heard before three judges on application for a preliminary

injunction. It was agreed that the hearing should be treated as a final hearing. The court sustained the motion of the United States and entered a final decree dismissing the bill. That decree is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220.

The essential facts are these: On October 20, 1919, the Director General of Railroads established a so-called penalty charge of $10 per car per day on lumber held at reconsignment points.[1] The declared purpose of the charge was " to prevent undue detention of equipment under the present emergency." The charge (in modified form) remained in force throughout the period of federal control; and thereafter it was continued by the carriers.

---

[1] The penalty was made payable for each day or fraction thereof; but only for the period that cars loaded with lumber or other forest products were held for reconsignment beyond 48 hours after the hour at which free time began to run under the car demurrage rules. By these rules 24 hours free time is allowed before any charge is made for storage and detention of the car at the reconsignment point. National Car Demurrage Rules (January, 1916) Rule 2, Sec. B, Par. 2. The penalty charge is declared to be in " addition to any existing demurrage and storage charges." *Sullivan Lumber Co.* v. *Great Northern Ry. Co.*, 58 I. C. C. 110, 111. The then existing demurrage charges were $2 a day per car for the first four days after expiration of the free time; and $5 per day for the fifth day and each day thereafter. Compare *Lowry Lumber Co.* v. *Director General*, 58 I. C. C. 113; 59 I. C. C. 90; *Wharton Steel Co.* v. *Director General*, 59 I. C. C. 613. Besides these demurrage charges there is a charge for the reconsignment privilege of $3 per car when reconsignment instructions are received at the reconsignment point prior to the arrival of the car, and a charge of $7 per car when the instructions are received after the arrival of the car. Compare *Reconsignment Case*, 47 I. C. C. 590; *Reconsignment Case No. 3*, 53 I. C. C. 455. Unlike the penalty charge, both demurrage charges and reconsignment charges are assessed upon shipments of all commodities. The demurrage charge is in part compensation to the carrier and in part a penalty to secure the release of equipment and tracks. *Demurrage Charges*, 25 I. C. C. 314, 315.

74308°—24——10

In September, 1920, the American Wholesale Lumber Association instituted proceedings before the Commission to secure cancellation of this charge as being unreasonable, unjustly discriminatory, unduly prejudicial and without warrant in law. The transit car privilege, permitting storage in cars for a short period at reconsignment points, is deemed an essential of the business by its members, who are largely jobbers and have no lumber yards. Protests against cancellation of the charge were filed by some associations of lumber manufacturers and dealers who customarily ship direct from the mills to their own lumber yards and have little occasion to use this reconsignment privilege. The imposition of the penalty charge was a direct benefit to them, since it subjected the jobbers, their competitors, to a severe handicap, and to that extent curbed the activities of these rivals. After extensive hearings the Commission held that it was within the power of the Director General, and of carriers, to establish penalty charges in order to prevent undue detention of equipment by shippers; that conditions existing at the time had warranted the establishment of a penalty charge; and that the charge then imposed had not been shown to be unreasonable. But the Commission also found that conditions had changed; that at the time of its decision there was a large surplus of service cars, which left the retention of the penalty charge without justification; and that while present conditions continue it is and will be unreasonable. An order was entered requiring carriers "to cease and desist . . . until further order of the Commission" from collecting the charge. The report stated "that our approval of the elimination of the charge at this time is based solely on existing conditions, and is not to be construed as an inhibition on carriers to publish penalty charges in the future if and when conditions warrant." *American Wholesale Lumber Association* v. *Director General*, 66 I. C. C. 393, 395, 408.

Plaintiffs are large manufacturers and dealers whose shipments are made mainly direct from the mills to destination. They claim that the order cancelling the penalty charge infringes their rights both as shipper and as prospective carrier. As shipper they claim to be injured because the jobbers are relieved from the handicap of the penalty charge; and also because longer detention of the cars at reconsignment points (which cancellation of the charge encourages) will subject shippers to the danger of car shortage, whenever general business again becomes active. Their claim of injury as prospective carrier is this: Plaintiffs are constructing in connection with a mill in Mississippi a local railroad which will soon be ready for operation. Cars acquired by them for use on their own railroad will naturally move to connecting lines and may then, in the absence of a deterring penalty charge, be used, like other cars, for temporary storage at reconsignment points; and the order of cancellation will encourage the use of plaintiff's cars for storage whereas their only legal use is for transportation. In this way the order entered not only prevents " the railroad from taking necessary steps to join the bulk of the lumber industry in suppressing the evil and dishonest practices " of jobbers, but prevents the railroads from charging an adequate rental (the penalty charge) for their equipment. The contention is that the order deprives railroads of the use of their property without due process of law in violation of the Fifth Amendment to the Federal Constitution to the detriment of plaintiffs who are interested in maintaining both a wholesome lumber business and effective transportation.

The mere fact that plaintiffs were not parties to the proceedings in which the order was entered does not constitute a bar to this suit. For it is brought to set aside an order alleged to be in excess of the Commission's power. *Interstate Commerce Commission* v. *Diffen-*

*baugh,* 222 U. S. 42, 49; *Skinner & Eddy Corporation* v. *United States,* 249 U. S. 557. But plaintiffs could not maintain this suit merely by showing (if true) that the Commission was without power to order the penalty charges canceled. They must show also that the order alleged to be void subjects them to legal injury, actual or threatened. This they have wholly failed to do. It is not alleged that the carriers wish to impose such charges and, but for the prohibition contained in the order, would do so. For aught that appears carriers are well satisfied with the order entered. Cancellation of a charge by which plaintiffs' rivals in business have been relieved of the handicap theretofore imposed may conceivably have subjected plaintiffs to such losses as are incident to more effective competition. But plaintiffs have no absolute right to require carriers to impose penalty charges. Compare *Interstate Commerce Commission* v. *Chicago, Rock Island & Pacific Ry. Co.,* 218 U. S. 88, 111. Plaintiffs' right is limited to protection against unjust discrimination. For discrimination redress must be sought by proceedings before the Commission. Its findings already made, and the order entered, negative such claim in this connection. The correctness of those findings cannot be assailed here; among other reasons, because the evidence on which they were made is not before the Court. *Louisiana & Pine Bluff Ry. Co.* v. *United States,* 257 U. S. 114.

The further claims of plaintiffs are, if possible, even more unsubstantial. They fear that, by reason of the order, they may, in the future, suffer in times of car shortage through the greater use of cars for storage. They fear that the equipment to be used in connection with the railroad which they expect to operate, may be diverted, at some time in the future, from transportation uses. If their fears are realized it will be open to them to apply to the Commission for relief. As the plaintiffs

do not show any interest which entitles them to sue, we have no occasion to consider either the power of carriers to impose the penalty charge or the power of the Commission to order its cancellation.

*Affirmed.*