## KANSAS CITY SOUTHERN RY. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

District Court, W. D. Missouri, W. D. December 31, 1926.

No. 704.

1. Commerce ⟨⟩92—Railway's suit to annul and suspend Interstate Commerce Commission's orders making final valuation, on theory of improper exercise of power rather than misvaluation, held within general equity jurisdiction (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).

In suit by railway to annul and suspend orders of Interstate Commerce Commission making final valuation provided for by Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591), and to enjoin use thereof on theory of improper exercise of power, rather than because of inaccuracy of result, held within general equity jurisdiction of federal District Court, since remedy at law would not be as complete, practical, or efficient, notwithstanding that technically the utmost effect of valuation was prima facie evidence.

2. Commerce ⟨⟩85(11)—Interstate Commerce Commission must make valuations of interstate carriers in statutory manner, and such duty may be judicially enforced (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).

Under Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591), Interstate Commerce Commission must make valuations of interstate carriers in manner prescribed, and such duty may be judicially enforced, to determine what duties of Commission are.

3. Commerce ⟨⟩85(11)—Congress had power to impose on Interstate Commerce Commission duty to make valuations of interstate carriers (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).

Congress held to have power to impose on Interstate Commerce Commission duty to make valuations of interstate carriers in manner prescribed by Interstate Commerce Act, § 19a, as

added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591).

**4. Commerce** ⊕═92—**National courts have jurisdiction to supervise Interstate Commerce Commission in making valuations of interstate carriers without express grant thereof. (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).**

National courts are proper courts to exercise supervision over Interstate Commerce Commission, which is administrative agent of government in making valuations of interstate carriers in manner prescribed by Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591), and their jurisdiction need not rest on express grants of jurisdiction in Interstate Commerce Act.

**5. Carriers** ⊕═26—**Basis of calculations as to reasonableness of interstate carriers' rates must be fair value of property used for convenience of public.**

Basis of all calculations as to reasonableness of rates to be charged by interstate carrier must be fair value of property being used by it for convenience of public, since Constitution fixes minimum rate as fair return on such value.

**6. Commerce** ⊕═88—**Findings of Interstate Commerce Commission relative to valuation of interstate carriers will not be disturbed, if founded on conflicting evidence, or unless they are arbitrary (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).**

Findings of fact of Interstate Commerce Commission relative to valuation of interstate carriers, under Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591), will be accorded strength due judgments of tribunal appointed by law and formed by experience, and will not be disturbed, if founded on conflicting evidence, or unless they are arbitrary.

**7. Mandamus** ⊕═73(1)—**Mandamus is not proper remedy to annul Interstate Commerce Commission's orders making final valuation of interstate carriers on theory that Commission exceeded its authority (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).**

Mandamus is not proper remedy to annul and suspend orders of Interstate Commerce Commission making final valuation of interstate carrier provided for in Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591), and to enjoin use thereof on theory that Commission exceeded or departed from its authority.

**8. Commerce** ⊕═91—**Order declaring final valuation of carrier's property held such "final action" of Interstate Commerce Commission as to entitle carrier to resort to federal District Court under statute (Comp. St. § 992).**

Order of Interstate Commerce Commission, declaring final valuation of property of interstate railway, *held* to be such final action as to entitle railway to resort to federal District Court, under Act Oct. 22, 1913 (Comp. St. § 992), to annul and suspend such order and enjoin use thereof.

**9. Commerce** ⊕═88—**Order making final valuation of carrier's property will be annulled, where Commission violated statute by restricting use of valuation to "rate-making purposes," and in failing to follow statutory directions (Interstate Commerce Act, § 19a, as added by Act March 1, 1913 [Valuation Act], amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]).**

Order of Interstate Commerce Commission, making final valuation of interstate railroad provided for in Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Valuation Act), amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 (Comp. St. § 8591), will be annulled, and use thereof enjoined, where valuation was limited to "rate-making purposes," and where Commission did not ascertain as directed the "original cost to date" or the intangible "values or elements of value."

In Equity. Suit by the Kansas City Southern Railway Company and others against the United States, in which the Interstate Commerce Commission intervened. Decree for petitioners.

Samuel W. Moore, of New York City, and Cyrus Crane and Frank H. Moore, both of Kansas City, Mo., for petitioners.

Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., and Blackburn Esterline, Asst. Sol. Gen., of Washington, D. C., for defendant.

Charles W. Needham and Oliver E. Sweet, both of Washington, D. C., for Intervener.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

PER CURIAM. The petitioners have filed their bill in equity to annul and suspend two certain orders of the Interstate Commerce Commission, wherein it made final the valuation provided for in section 19a of the Interstate Commerce Act. Moreover, they seek to enjoin the use of said valuations by said Commission. The action proceeds against the United States. The Interstate Commerce Commission has intervened. The government challenges the jurisdiction of the court in the controversy, and the intervener insists that the proceedings before the

Interstate Commerce Commission were marked with such regularity as to entitle it to a dismissal of the bill upon the merits of the controversy.

Section 19a of the Interstate Commerce Act is the Valuation Act, approved March 1, 1913 (amended by Act Feb. 28, 1920, § 433, and Act June 7, 1922, §§ 1, 2 [Comp. St. § 8591]), and paragraph (a) provides for the investigation, ascertainment, and report upon "the value of all the property owned or used by every common carrier subject to the provisions of this act." By paragraph (h) of the said Valuation Act, it is provided that—

"Whenever the Commission shall have completed the tentative valuation of the property of any common carrier, as herein directed, and before such valuation shall become final, the Commission shall give notice by registered letter to the said carrier, * * * and shall allow thirty days in which to file a protest of the same with the Commission."

Conformable to this provision, petitioners were notified of such tentative valuation and a protest, contemplated by the succeeding paragraph (i), was filed, heard, and overruled, and petitioners are now complaining against the final orders in relation to said value. By said paragraph (i) of the act—

"If after hearing any protest of such tentative valuation under the provisions of this act the Commission shall be of the opinion that its valuation should not become final, it shall make such changes as may be necessary, and *shall issue an order* making such corrected tentative valuation final as of the date thereof. All final valuations by the Commission * * * shall be published and shall be *prima facie evidence* of the value of the property *in all proceedings under the act* to regulate commerce * * * *and in all judicial proceedings* for the enforcement of the act approved February fourth, eighteen hundred and eighty-seven, commonly known as 'the Act to Regulate Commerce,' and the various acts amendatory thereof, *and in all judicial proceedings* brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission."

It will be observed from the foregoing that the only order entered by the Commission is the one "making such corrected tentative valuation final as of the date thereof." Upon this order such final valuation (a) "shall be published" and (b) "shall be prima facie evidence of the value of the property" in proceedings under the Act to

Regulate Commerce, "and in all judicial proceedings brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission."

It is obvious from the foregoing that the final valuations made for and accepted by the Commission are made final by order of the Commission and that when thus made final they become eligible for publication and also become prima facie evidence. Such order had the force and effect to conclude the inquiry on the valuation project. It was contemplated by the law that there must be an end to the inquiry and that when same was reached the final conclusion upon the valuation should be stamped with an order of finality, so that publication might be made and use made of such valuation as a basis for proceedings before the Commission and in judicial proceedings.

Apparently the purpose of this was to furnish information to Congress and to others who might be interested and to provide a working basis for the Commission in all future proceedings before that body and in certain judicial proceedings. The petitioners were seriously affected by it, as it would devolve upon them the duty, if they controverted the valuation, to overcome such prima facie case in proper proceedings where they might be parties in interest.

By the next paragraph of the Valuation Act, the Congress undertook to prevent the defeat of such valuation in any judicial proceeding by testimony that had not been presented previously to the Commission. In such case it was provided that such proceedings should be stayed until the testimony not previously before the Commission should be submitted to that body and the opportunity extended to "alter, modify, amend or rescind any order which it has made involving said final value, and shall report its action thereon to said court within the time fixed by the court."

While the valuation project may be an administrative matter, and may constitute merely a procedural or working basis for the Commission, and may not be conclusive either upon petitioners or upon the Commission itself, yet it becomes a matter of such serious moment to the parties affected as to entitle them to challenge the validity of a conclusion that may hereafter confront them as a prima facie case. This they are doing in the instant case. If the conclusions of the Commission as to the value of the properties involved were irregularly and erroneously reached, then their invalidity ought to be established, so that petitioners may not be

called upon to combat, with evidence, an illegal prima facie case.

Adverting to the congressional act, it is to be noted that the legislative mandate to the Interstate Commerce Commission was to "investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of this act," and that—

"In such investigation, said Commission shall ascertain and report in *detail* as to each piece of property" other than land, "owned or used by said common carrier for its purpose as a common carrier, the original cost to date, the cost of reproduction new, the cost of reproduction less depreciation, and an analysis of the methods by which these several costs are obtained, and the reason for their differences, if any. The Commission shall in like manner ascertain and report separately other values, and elements of value, if any, of the property of such common carrier, and an analysis of the methods of valuation employed, and of the reasons for any differences between any such value, and each of the foregoing cost values. * * *

"Second. Such investigation and report shall state in detail and separately from improvements the original cost of all lands, rights of way, and terminals owned or used for the purposes of a common carrier, and ascertained as of the time of dedication to public use, and the present value of the same. * * *

"Third. Such investigation and report shall show separately the property held for purposes other than those of a common carrier, and the original cost and present value of the same, together with an analysis of the methods of valuation employed."

It was the duty of the Commission, acting under congressional authorization, to comply with the directions of Congress and to present a valuation conformable to the directions of the legislative act from which it got its authority and attempted to proceed.

### Jurisdiction.

[1] 1. The first question for consideration is that of the jurisdiction of this court. The case is within the general equity jurisdiction of the court, because obviously the remedy at law would not be as complete, as practical, and as efficient to meet the ends of justice and its prompt administration as the remedy in equity.

[2, 3] By the provisions of section 19a of the Act to Regulate Commerce, as amended,

Congress placed upon the Interstate Commerce Commission the duty of making valuations of interstate carriers, and provided, along general lines, how those valuations should be made by the Commission. Congress had power to impose this duty, and the Commission is obligated to perform it. Moreover, it is obligated to perform such duty in the manner prescribed by Congress (Kansas City Southern Ry. Co. v. Interstate Commerce Commission, 252 U. S. 178, 40 S. Ct. 187, 64 L. Ed. 517), and this duty may be judicially enforced (same citation). This does not mean that courts may be resorted to for the purpose of making such valuations, nor to review and correct those made by the Commission; but it means that courts may be resorted to for the purpose of determining what are the duties of the Commission as set forth in the statute and of enforcing action by the Commission in accordance with such duties so determined.

This jurisdiction need not rest upon the express grants of jurisdiction contained in the Commerce Act as amended, which are not exclusive (Hines' Trustees v. United States, 263 U. S. 143, 44 S. Ct. 72, 68 L. Ed. 216; also see Louisville & Nashville R. R. Co. v. Garrett, 231 U. S. 298, 311, 34 S. Ct. 48, 58 L. Ed. 229), but finds ample basis in the general jurisdiction of courts of law and equity to confine administrative agencies to the exercise of the powers and to perform the duties and only such powers and duties, as are granted to or imposed upon them. Whenever a litigant alleges that an administrative agency has, in a manner affecting his legal rights, refused to do a thing it is required to do or has done something it had no power to do, he may invoke the power (legal or equitable, as may be) of the proper court to protect his rights by compelling such agency to do its legally enjoined duty or to remain within its legally granted powers.

[4] The proper courts to exercise this supervision over administrative agencies created by the national government are the national courts. The Interstate Commerce Commission is such an administrative agent and it is subject to such control, and is subject to it in respect to valuations under the Valuation Act. K. C. Southern Ry. Co. v. Interstate Commerce Commission, 252 U. S. 178, 40 S. Ct. 187, 64 L. Ed. 517.

This petition clearly avers misconception and transgression by the Commission of the powers granted and duties imposed by the Valuation Act in a valuation proceeding thereunder of the properties of these pe-

titioners. It may or may not be that these allegations are sustained by the proof, but that is a matter of the right to the relief sought, not of the jurisdiction to entertain and to determine the controversy.

Defendants contend that there is lack of jurisdiction, because no legal damage or injury can result to petitioners, since the utmost effect of such a final valuation is as prima facie evidence. We think this is answered by the K. C. Southern Ry. Co.'s Case, supra, as a matter of authority. On this particular point, the situation in that case is even stronger than here presented because the valuation there was only "tentative." Also, we think the contention is wrong in principle. This valuation is not conclusive on the Commission and the courts, but it certainly is intended to and it undoubtedly will affect important rights of these petitioners in a serious if not even in a vital manner. The purpose of the Valuation Act was not to preserve evidence which might be lost. It was to assemble facts and therefrom form and state conclusions of fact, which should be readily usable as evidence. The character of the questions involved, the practical situation surrounding the controversies wherein such evidence would be useful, and the resulting necessity of creating and having readily accessible and legally usable such kind of evidence, all convince of its consequence and importance.

In 1887 (Act of February 4, 1887, 24 Stat. 379 [Comp. St. § 8563 et seq.]) Congress initiated its legislative policy of regulating the rates of interstate carriers. That act was a venture into a new field and was, in a sense, experimental. Texas & Pac. Railway Co. v. Interstate Commerce Comm'n, 162 U. S. 197, 218, 16 S. Ct. 666, 40 L. Ed. 940. The practical operation under that act developed problems and suggested solutions requiring further legislative action. The act as now amended is a growth based upon experience. In so far as regulation of rates is concerned, that growth is marked by these principal stages: (1) The original act (1887), which declared unreasonable rates unlawful, and delegated to the Commission the power to ascertain and declare rates to be unreasonable; (2) the Hepburn Amendment (June 29, 1906, 34 Stat. 584, 589), which empowered the Commission to ascertain and fix reasonable rates; and (3) the Valuation Act (March 1, 1913, 37 Stat. 701), which empowered the Commission, in advance of any actual controversy, to ascertain the values which might be used as evidence in determining the reasonableness of rates when such controversies should arise.

[5] The Constitution, as construed by numerous Supreme Court decisions, fixes a *minimum* rate which all utilities, the rates of which are subject to governmental regulation, may be compelled to accept. That minimum is "a fair return upon the value of that which it employs for the public convenience." Smyth v. Ames, 169 U. S. 466, 547, 18 S. Ct. 418, 434 (42 L. Ed. 819). Therefore "the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public." Smyth v. Ames, supra, page 546 (18 S. Ct. 434).

As the determination of the above constitutional minimum required an ascertainment of the value of the property devoted to the public use, as the fixing of a reasonable rate must rest upon the basis of such valuations, and as it was the duty of the Commission to declare unreasonableness of rates and to fix reasonable rates, it was of paramount importance to the Commission, in the performance of the above duties, to ascertain such values of the carriers whenever such a rate controversy came before it.

When such actual rate controversies came before the Commission, it was faced with practical obstacles which made the proper performance of these duties difficult, if not impossible. The valuation of a railway property was an extremely complicated matter. It involved investigations, inventories, and estimates requiring the exercise of engineering and accounting processes, as well as the collection of a vast variety and amount of other information. This necessitated much expense and required much time. Much of the desired information and data were entirely within the control of or knowledge of the carriers. The Commission had not the funds to finance such investigations. If it had possessed the means, the long delay in securing the facts would have been, after such a rate controversy actually arose, a source of injustice and a most burdensome and unsatisfactory method of procedure. Also there was grave doubt whether the powers already possessed by the Commission were sufficient to authorize the actions which such a searching view into the affairs and business of the carriers would require. Also the Commission found, from experience, that it could not accept and rely solely upon the estimates of such value presented by the

carriers. Therefore the Commission was early driven to ask congressional relief.

The solution suggested by the Commission for these difficulties was a valuation of the property of each interstate carrier, this valuation to be made independent of any actual rate controversy, and the results thereof to be given the standing of prima facie evidence usable in any such controversy that might come before it. Thus the Commission would have, always and readily accessible, complete information as to the value of all carriers under its jurisdiction, which information had been carefully, intelligently, and impartially assembled and tested, and which was available for evidentiary purposes in rate cases as they might come before it. Therefore the Commission urged upon Congress the passage of a valuation statute, setting forth the importance thereof and the grounds therefor, as above mentioned and otherwise, in numerous annual reports. 17th Ann. Rep. (1903) p. 26; 22d Ann. Rep. (1908) pp. 83–85; 23d Ann. Rep. (1909) p. 6; 24th Ann. Rep. (1910) p. 37; 25th Ann. Rep. (1911) pp. 93, 99; 26th Ann. Rep. (1912) p. 70. In response to these recommendations and other activity repeated attempts were made in Congress (49 Cong. Rec. pp. 3795, 3796) to enact such legislation, culminating in the Valuation Act, March 1, 1913.

The broad main purposes of that act are evident. They are made clear in the terms of the act itself, in the hearings before the committees of the two houses (Senate Rep. 1290, 62d Cong. 3d Sess. p. 18 et seq. and 204 et seq.), in the reports of the two committees (same, pp. 5 and 237), and in the debates (49 Cong. Rec. pp. 46–176, 170–177, 3793, 3794–3806, appendix, p. 37). The *immediate* purpose was to furnish the Commission and the courts with ready, accessible evidence of value in rate controversies. The *ultimate* purpose was to stabilize the valuation basis upon which the rates, as a whole, of a carrier should rest.

The above ultimate purpose will, logically and naturally, evolve from the operation and accomplishment of the above immediate purpose. The final result, desired, desirable, and normally to be expected, will be the attainment of a status or measurement of value of the property of each carrier, which will admit of only narrow variations as a practical proposition. We think this result is inevitable because of the character of the problem, the conditions always surrounding its determination, and the natural usage, in its solution, of the valuations made under the act.

[6] The problem, so far as valuation is concerned, is to determine the value of a carrier at a given time; i. e., of the controversy before the Commission or court. If before the Commission, the inevitable tendency will be for the Commission to give very great weight to its own valuation, which will be introduced as prima facie evidence. That valuation will be the standard accepted, unless shown clearly to be erroneous, in which case the valuation will be modified to accord to the new evidence, thus, in turn, becoming ever more accurate, weighty, and stable. If before the courts, the matter will necessarily arise in connection with a review of an order made by the Commission; an order based on a valuation by the Commission wherein the "final valuation" under the act will have had its due, if not controlling, weight.

As to such review, the findings of fact of the Commission will not be disturbed, if founded on conflicting evidence (Penn. Co. v. United States, 236 U. S. 351, 361, 35 S. Ct. 370, 59 L. Ed. 616; Los Angeles Switching Case, 234 U. S. 294, 311, 34 S. Ct. 814, 58 L. Ed. 1319; A., T. & S. F. Ry. Co. v. United States, 232 U. S. 199, 221, 34 S. Ct. 291, 58 L. Ed. 568; I. C. C. v. L. & N. R. R. Co., 227 U. S. 88, 92, 33 S. Ct. 185, 57 L. Ed. 431; I. C. C. v. U. P. R. R. Co., 222 U. S. 541, 547, 32 S. Ct. 108, 56 L. Ed. 308; I. C. C. v. D., L. & W. R. R. Co., 220 U. S. 235, 251, 31 S. Ct. 392, 55 L. Ed. 448), or unless such findings are "arbitrary" (Seaboard Air Line Ry. Co. v. United States, 254 U. S. 57, 62, 41 S. Ct. 24, 65 L. Ed. 129), and such findings would be accorded "the strength due to the judgments of a tribunal appointed by law and informed by experience" (Ill. Cent. R. R. Co. v. I. C. C., 206 U. S. 441, 454, 27 S. Ct. 700, 704, 51 L. Ed. 1128). It can hardly be supposed that a finding based on such a valuation, which the act makes prima facie evidence, will be regarded by the courts as being unsupported by evidence or "arbitrary." Also neither the order, when before a court, nor the valuation upon which it might be based, could be weakened by new evidence, for the act requires the court to suspend hearing and refer such new evidence to the Commission, for its consideration in connection with the order, which means, of course, the valuation. The matters just stated would probably be sufficient in themselves to result in the valu-

ations, kept up to date as required, of the Commission becoming the standards of value which would be closely followed by the Commission and by the courts.

There are other weighty practical considerations which would bear heavily in the same direction. The valuation of carriers has arisen and will arise before various commissions and courts having jurisdiction of controversies regarding rates. Value of a carrier property depends upon so many items and considerations and the particular view which may be taken by the individual or individuals who are endeavoring to ascertain it, that it is, at best, little more than an educated guess and in no sense capable of mathematical solution or proof. The result has been that the value of the same carrier has been determined differently by different tribunals, or even by the same tribunal at different closely related periods. The difficulty, complexity, vastness, and character of the problem, with the diversity of results, has inevitably resulted in complete chaos. There is an utter lack of certainty, stability, or harmony in such valuations. The carriers, the public, regulatory commissions, and the courts are without definite standard.

This state of flux, where there should be stability, is confusing to commissions and courts, is distressing to the carriers and the public, and is altogether most undesirable. The valuations authorized by this act, in conjunction with the provisions for the use of them as evidence, and the constant revision of them by the Commission to keep them up to date and the opportunities for correction through new evidence, offer the only realizable hope of a correction of the existing unsatisfactory condition, through the gradual acceptance and establishment of a definite value, founded upon careful detailed investigation by one impartial and highly trained tribunal. That such will be the result we cannot doubt. It is so natural and so desirable that it must follow.

Congress, the Commission, and the carriers appreciated the far-reaching effect of the valuations to be made under the act. Senator La Follette (who had charge of the bill in the Senate) said: "I believe the pending bill to be more important and far-reaching in the benefits which will ultimately flow from it than any measure which Congress has enacted in many years." 49 Cong. Rec. p. 3795. In the various Annual Reports of the Commission to Congress (above cited) the importance and urgent need of

such legislation was set out. In the hearings before the Senate committee (Report 1290, 62d Cong. 3d. Sess., p. 22) Mr. Frank Trumbull, a leading railroad official, said: "This is the most important event of its kind, probably in history. * * *" And again (page 27): "As I have stated, it is the biggest undertaking of its kind in history."

The importance of this work of valuation is emphasized also by the magnitude of the undertaking and the large expense thereof. It has required about 10 years of intensive work by a large force of men at an expenditure, by the government and the carriers, running up into millions of dollars. The use and usefulness of these valuations and the elements of them is already evident. The Commission is making use thereof, even though the particular final valuation was not at the time completed. Increased Rates Case, 58 Interst. Com. Com'n R. 220; Constructive Mileage over Poughkeepsie Bridge, 66 Interst. Com. Com'n R. 232; Reduced Rates Case, 68 Interst. Com. Com'n R. 676; Rates and Charges on Grain and Products, 91 Interst. Com. Com'n R. 105, 110; also see Intra State Rates within Illinois, 59 Interst. Com. Com'n R. 350, 364.

Consideration of all of the above matters convinces us that these valuations are of very great importance and will have a very far-reaching practical effect. If this be true, the importance of having them made in the manner required by the Act is great. Therefore we think it cannot be said that the carriers have no legal rights affected until there arises an actual controversy in which it is sought to introduce such valuations as evidence. It may be that the courts have no jurisdiction to review, in a direct attack upon such a valuation, the accuracy of the conclusions reached by the Commission, but the question of whether the Commission has done its work in the way Congress required is very different. That is a question of the *power* of the Commission, not of the accuracy of its work done under powers it has. As this petition challenges the powers of the Commission, we think this court has jurisdiction to entertain and should determine whether this challenge is sustainable.

[7] It has been suggested that, if the Commission has departed from its authority, the remedy is by mandamus and not through the equitable remedy of injunction. It seems to us that mandamus would not afford adequate relief under the circumstances of this case. Here the *final* valuations have

been filed and are now available under the act for use as prima facie evidence of the value of the properties of the respective petitioners. If these valuations were not made in accordance with the act, they should not have this probative force. Petitioners are claiming that the valuations were not made in accordance with the Act. The major defects, alleged here, were urged upon the Commission before the valuation became final and it was unable to agree with petitioners' position. That denial appears first in the banal valuations. This action is promptly brought thereafter.

It would seem that petitioners had been very diligent, had afforded the Commission full opportunity to accord them the rights they deem theirs, and will be harmed if the final valuations stand and if petitioners are correct in their statement of their rights. We think they can be adequately protected only through proper decrees enjoining the final valuations; therefore that the form of this action is proper and the subject-matter of equitable cognizance. Our conclusions are that this court has jurisdiction of the subject-matter of this petition and that the action was properly brought in equity.

[8] Moreover, this is a proceeding to set aside, annul, or suspend, in whole or in part, an order of the Interstate Commerce Commission and to enjoin its enforcement. Jurisdiction for this purpose was transferred to this court by section 992, United States Compiled Statutes 1918 (38 Statutes at Large, p. 219).

In Delaware & Hudson Co. v. United States (D. C.) 295 F. 558, a statutory court like this, the court said: "Undoubtedly the tentative valuation of petitioner's property above referred to is an order of the Commission."

In the instant case, a *final* valuation of the Commission is challenged and the *order* of finality would have such an effect upon the rights of the petitioners as to make it an order assailable under the statute. While in the case of Delaware & Hudson Co. v. United States, supra, the Supreme Court held that the action was prematurely instituted because it sought to enjoin a tentative valuation only, yet in the opinion of the court it was held that, "under the circumstances disclosed, appellants must pursue the remedy provided by the statute and give the Commission opportunity to take *final* action before they can properly ask interposition by the courts."

The order here challenged was such a *final* action of the Commission as to entitle the petitioners to resort to this court. The order was as follows: "It is ordered that the following be, and it is hereby declared to be, the final valuation of the property of [the companies who are petitioners herein] as of June 30, 1914."

[9] 2. The inquiry of the court into the controversy herein will be limited to an examination of the record of the proceeding before the Interstate Commerce Commission, to determine whether or not that tribunal exercised in a regular manner its jurisdiction over the subject involved, and whether in reaching a determination it disregarded any of the constitutional rights of the petitioners. This, of course, involves the power of the Interstate Commerce Commission to make the orders assailed.

As hereinbefore stated, the Commission was directed to "ascertain and report in detail as to each piece of property, other than land, owned or used by said common carrier for its purposes as a common carrier; the original cost to date; the cost of reproduction new; the cost of reproduction, less depreciation, and an analysis of the methods by which these several costs are obtained and the reason for their differences, if any."

Admittedly, the Commission did not do this, but substituted for "the original cost to date" its own judgment as to what the investment of the petitioners had been. The legislative mandate was to determine "the original cost to date," and the petitioners claim that this cost could have been easily ascertained, as the facts and figures were available to the Commission for this purpose. Moreover, no attempt was made to present "an analysis of the methods by which these several costs are obtained and the reason for their differences, if any."

The final valuation, by order of March 4, 1924, was fixed at $49,016,268, and such value was limited to a valuation "for ratemaking purposes." The Commission had no right thus to restrict a valuation which, when finally made, was designed to become prima facie evidence "in all proceedings under the Act to Regulate Commerce * * * in all judicial proceedings for the enforcement of the act * * * and in all judicial proceedings brought to enjoin, set aside or suspend in whole or in part any order of the Interstate Commerce Commission." The congressional purpose was for an ascertainment and report on the true value of the properties of the carrier.

A further duty devolved upon the Commission to "ascertain and report separately other values and elements of value, if any,

of the property of such common carrier, and an analysis of the methods of valuation employed and of the reasons for any differences between any such value and each of the foregoing cost values." The Commission declined to make any allowance whatever for recognized elements of value which may be defined as intangible values. This was doubtless the meaning of Congress when it directed that the Commission "ascertain and report separately other values and elements of value, if any." On this question the decisions of the Supreme Court of the United States declare:

"That there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced, is self-evident. This element of value is a property right, and should be considered in determining the value of the property, upon which the owner has a right to make a fair return when the same is privately owned although dedicated to public use." John W. McCardle et al. v. Indianapolis Water Co., 47 S. Ct. 144, decided by the Supreme Court November 22, 1926, and citing Des Moines Gas Co. v. Des Moines, 238 U. S. 153, loc. cit. 165, 35 S. Ct. 811, 59 L. Ed. 1244; Denver v. Denver Union Water Co., 246 U. S. 178, loc. cit. 191, 192, 38 S. Ct. 278, 62 L. Ed. 649.

In making its valuation the Commission may have experienced difficulty in determining present value of the properties of the petitioners. The original cost to date should have been ascertained, as well as the cost of reproduction new and the cost of reproduction less depreciation. While these would not constitute decisive factors, yet they are "matters for consideration." "The weight to be given to such cost figures and other items or classes of evidence is to be determined in the light of the facts of the case in hand." McCardle et al. v. Indianapolis Water Co., supra.

It would have been reasonable for the Commission to have stated the reasons for any differences between any such value and each of the foregoing cost values. Similar considerations apparently controlled the Commission with respect to land values. The original cost of lands, rights of way, terminals, etc., was not ascertained and used by the Commission in reaching its conclusions as to present value. As was said in the McCardle Case, supra: "Prices and values have so changed that the amount paid for land in the early years of the enterprise and the cost of plant elements constructed prior to the great rise of prices due to the war do not constitute any real indication of their value at the present time."

The court further said in the McCardle Case that, in the absence of a definite trend of prices, either upward or downward, and in the absence of a probable substantial change of prices, "then the present value of lands plus the present cost of constructing the plant, less depreciation, if any, is a fair measure of the value of the physical elements of the property."

The foregoing constitutes a sufficient statement of the grounds of complaint urged by petitioners. It is the duty of the Commission to construe and apply the law correctly and to act in all of its proceedings within its statutory powers. Otherwise its orders are invalid. United States v. New York Central R. R., 263 U. S. 603, loc. cit. 609, 44 S. Ct. 212, 68 L. Ed. 470; Skinner & Eddy Corp. v. United States, 249 U. S. 557, loc. cit. 562, 39 S. Ct. 375, 63 L. Ed. 772; Interstate Commerce Commn. v. Union Pacific R. R. Co., 222 U. S. 541, loc. cit. 547, 32 S. Ct. 108, 56 L. Ed. 308.

As above indicated, the Commission did not correctly construe and apply the law. It acted beyond its statutory powers and contrary to the evidence, all of which resulted in a denial to the petitioners of their constitutional rights. Accordingly the several orders of the Commission, wherein the valuation of the properties of the carrier is made final, will be annulled and the enforcement thereof enjoined.