## WOODRUFF v. UNITED STATES et al.
### No. 625.

District Court, D. Connecticut.

Aug. 29, 1941.

Robert J. Woodruff and Arthur Klein, both of New Haven, Conn., for plaintiff.

William ·S. McGovern, Sp. Atty., of Washington, D.C., for the United States.

Nelson Thomas, of Washington, D.C. (Thurman Arnold, Asst. Atty. Gen., Frank Coleman, Sp. Asst. to Atty. Gen., and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., of counsel), for Interstate Commerce Commission.

William L. Barnett, of New Haven, Conn. (H. D. Boynton and R. W. Pickard, both of New Haven, Conn., of counsel), for trustees of New York, N. H. & H. R. Co.

Before FRANK, Circuit Judge, and GODDARD and HINCKS, District Judges.

PER CURIAM.

Prior to 1938 it appears that the line of railroad in question barely paid the out of pocket cost of its operation, and that for the years 1938 to 1940 inclusive, the earnings have been somewhat greater, due in large part to the presence of one additional patron of the line. However, the Interstate Commerce Commission has found that by far the greater part of the business on the line has been contributed by a very few shippers, that the largest shipper, Woodruff Fertilizer Co., has made arrangements to move his location, and that the next largest shipper, the Lee Company, has made an arrangement to receive its freight elsewhere.

The plaintiff has criticised this finding as based on hearsay. It is true that at the hearing at Hartford at which the evidence was taken, the plaintiff objected to certain evidence on this point and the evidence was received over his objection and included in the record of fact which was transmitted for the consideration of the Commission. But the opinion of the Commission makes it plain that it recognized as hearsay the evidence objected to. Its finding, apparently, was based on other evidence not open to such criticism. For the railroad in its return to the official questionnaire of the Commission in connection with its application for authority to abandon, had recited that the principal users of the segment, representing 86% of its tonnage, had indicated a willingness to receive their freight at another station. Consequently, the subsequent and continued absence of opposition to the abandonment by the two largest shippers was in itself ground for a fair inference that they had indeed agreed to receive their freight elsewhere. And further there was direct testimony from a representative of the Highway Commissioner of the State of an agreement between the State and the Fertilizer Company, the largest shipper on the segment, for the removal of its plant to another location. Thus taking into account the whole record, we cannot say that the finding of the Com-

mission on this point, or indeed on any other point, was not supported by legal evidence.

With the business contributed by these two largest shippers gone, it appears that the line will not earn the bare out of pocket cost of operation and will contribute nothing toward the fixed charges and overhead essential to the continued operation of the system. Consequently the solicitude of the respondent trustees, charged with the operation of the line, to accomplish an abandonment is readily understandable; there was a substantial danger that the line, unless abandoned, would constitute a positive drain upon the resources of the system with its interstate ramifications.

On the other hand, it appears that the plaintiff, as a property owner having a warehouse located on the line, as indeed all other abutting property owners and shippers, will suffer in varying degrees some inconvenience from an abandonment of the line. Indeed, the abandonment may adversely affect the value of the plaintiff's property, which heretofore has been served by the line. Assume that this is so; yet it does not follow that abandonment cannot lawfully be accomplished, or that the order here challenged was contrary to law.

Prior to the Transportation Act of 1920, in circumstances such as these, a railroad, at least in the absence of charter provisions to the contrary, could abandon at will. But by section 402 of that Act, 41 Stat. 477, 49 U.S.C.A. § 1(18), the right of abandonment was subjected to the supervision of the Interstate Commerce Commission. And now an abandonment can only be accomplished upon a finding of convenience and necessity by that authority. In reaching its determination on this issue it is not necessary that the Commission "determine with mathematical exactness the extent of the burden imposed upon interstate commerce by the operation of a branch line." Transit Commission v. United States, 284 U.S. 360, at page 370, 52 S. Ct. 157, at page 159, 76 L.Ed. 342. Rather the Act contemplates that the Commission shall make a considered balance of the respective conflicting interests, its "effort being to decide what fairness to all concerned demands." Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 456, 70 L.Ed. 878.

This is just what is shown to have been done here. The Commission appears to have determined in the light of all available evidence, including information furnished in response to a searching questionnaire which it required of the respondent trustees showing the performance of the segment in the past, and evidence bearing on the contemplated results of prospective operation, that continued operation would indeed constitute a drain on the resources of the railroad. On the other hand, its opinion shows that the Commission appears to have considered fully the effect of abandonment on the plaintiff and the shippers and the public in the territory affected. It has noticed that the injurious effects were somewhat mitigated by the existence of several other nearby freight stations on the railroad and the existence of a highway system which would enable the public to get service in all cases without unduly increasing the haul by highway generally present to some extent at least even with the rail segment in operation.

For after all, when this line of railroad was built, carriage by highway was a far less satisfactory substitute for the delivery of local freight than is now the case. But now, with local communities so well provided with networks of improved highways in competition with the rails it has become increasingly essential for the preservation of sound and efficient railroad systems that their existing freight traffic should be consolidated. Thus by the elimination of a multiplicity of branch line stations the resources of railroads can be concentrated on their larger arteries. These in conjunction with the local highways furnish in the aggregate a system of transportation which gives the public as a whole a service much faster and more efficient that it enjoyed from the combination of the local station and the horse-drawn wagon.

To be sure, abutting owners and shippers accustomed to local service may find the process of transition the occasion of inconvenience; it may even depress property values. But the law contemplates that these incidents must yield to the broader public interests. And here on a record which includes all the relevant factors, the Commission to which Congress confided the responsibility of decision has decided that the abandonment should be authorized. It does not lie within the province of this court to interfere with a conclusion which we find was fully supported by the underlying record.

We hold, therefore, that the complaint before us should be dismissed for want of equity.

953

The plaintiff has further contended that the order of the Commission is void for procedural reasons. It seems that the Commission instead of requiring the parties and all others interested to come to Washington for a hearing, assigned the trustees' application for authority to abandon for hearing at Hartford in this District "before the Public Utilities Commission of Connecticut." And the hearing was indeed conducted by Mr. Edwy L. Taylor, a member of that Commission. The proceedings of the hearing were reported throughout by the official reporters for the Interstate Commerce Commission and their transcript of the evidence was submitted not to Mr. Taylor but to the Commission for consideration and decision. It is true that the State Commission recommended the allowance of the abandonment. But this recommendation was wholly independent of the activity of the State Commission in its conduct of the hearing at the request of the I. C. C. And the process of decision did not begin until the Commission took the matter into consideration upon the transcript made as aforesaid and upon the briefs of the parties. The plaintiff urges that the order of the Commission is void because under the aforesaid procedure he was deprived of a legal hearing.

The shortest answer to this contention lies in the simple observation that the plaintiff had no right to a formal hearing in the premises. For Par. 19 of Sec. 1 of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 1(19), as also 49 U.S.C.A. 20a(6) to which it contains a reference, make it plain that on a proposed abandonment of a railroad line in addition to the railroad involved only the Governor of a State or other appropriate State authority is entitled to be heard as of right. Section 1, Par. 19, expressly confers on the I. C. C. power to prescribe "rules and regulations as to hearings". And section 20a(6) provides that the Commission "may hold hearings, if it sees fit, to enable it to determine its decision." The language quite clearly contemplates that the State authorities shall be consulted, but that hearings shall be had only if the Commission sees fit. Doubtless, in a multitude of cases the Commission might properly proceed, ex parte. We hold, accordingly, that neither the plaintiff here, an abutting owner, nor any shipper is entitled to a formal hearing as of right. The statute law goes to no such lengths.

Prior to the enactment of the Transportation Act of 1920, the carrier could have abandoned without let or hindrance. That statute merely provided that, in order to protect the public interest, no carrier could abandon without first obtaining from the Commission a permit (called a certificate of public convenience and necessity) and that, before issuing such a permit, the Commission should take into account the public interest. Nothing in that statute or any other statute or in any decision requires or suggests that, as a condition precedent to the issuance of such a permit, the Commission must give a hearing to shippers or persons situated as is the plaintiff.

Indeed, similar considerations require the dismissal of this suit on an additional ground: Absent some statute, neither plaintiff nor any shipper has a cause of action against the carrier for threatened or actual abandonment; financial loss may exist, but it is damnum absque injuria. If any action will lie, it must rest upon some statute creating a substantive legal interest, inhering in the plaintiff as an individual private person, which will be invaded by the abandonment. We find nothing in any statute creating such a substantive interest which is entitled to protection against the abandonment by the carrier pursuant to a certificate or against the issuance of a certificate by the Commission. It follows that the plaintiff cannot complain of alleged or real errors in the Commission's procedure. Plaintiff's suit, since it discloses merely damnum absque injuria, involves no justiciable "case or controversy". See Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 84 L.Ed. 374; Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 129, 60 S.Ct. 869, 84 L.Ed. 1108; Atlanta v. Ickes, 308 U.S. 517, 60 S.Ct. 170, 84 L.Ed. 440; Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 137, 59 S.Ct. 366, 83 L.Ed. 543; Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665, 667, affirmed 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381; Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Coleman v. Miller, 307 U.S. 433, 460, 59 S.Ct. 972, 83 L.Ed. 1385, 122 A. L.R. 695; Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216; A. Sprunt & Son v. United States, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; Pittsburg & W. Va. Ry. v. United States, 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980; L. Singer & Sons v. United States, 311 U.S. 295, 304, 308, 61

954

S.Ct. 254, 83 L.Ed. 198; Colorado v. United States, 271 U.S. 153, 167–169, 46 S.Ct. 452, 70 L.Ed. 878.

■ In further answer to plaintiff's contention, it can be said that the procedure adopted by the I. C. C. in delegating to the Connecticut Commission the task of taking the testimony was in no respect in conflict with the underlying law. Par. 3 of Sec. 13 of the Interstate Commerce Act, 49 U.S.C.A. § 13(3), expressly authorizes the Interstate Commerce Commission "to avail itself · of the cooperation, services, records, and facilities of * * * State authorities in the enforcement of any provision" of the Act. Under this authority the Commission has long indulged in the procedure here criticised. In its annual reports to Congress in 1921 and 1922 it has called particular attention to the practice; yet Congress made no change in this provision although it has since amended other features of the Act. See 49 U.S.C.A. § 3. The practice has been recognized with apparent approval in Colorado v. United States, 271 U.S. 153, 155, 46 S.Ct. 452, 70 L.Ed. 878. The practice obviously is highly desirable from the standpoint of the convenience of the parties, the expeditious discharge of business by the Commission and all other practical considerations.

After all the practice has its counterpart in judicial procedure. For it amounts, in essence, to scarcely more than the device, of universal judicial recognition, of taking the testimony of distant witnesses by deposition. To be sure, the authority taking the testimony in the first instance controls the admission and exclusion of evidence. But this is largely a ministerial task; definitely it does not infringe upon the function of making the decision. So here, the State Commissioner presiding at the hearing at Hartford admitted certain evidence over the plaintiff's objection and later the Commission at Washington ruled that the evidence was indeed hearsay, just as occurs generally in procedure by deposition. And doubtless if the Interstate Commerce Commission, which alone had the power of decision, had felt that the plaintiff was entitled to evidence which the Commissioner at Hartford had excluded it had power on application to reopen the record to make that possible.

■ The plaintiff relies upon a section of the Motor Carrier Act, 1935, 49 U.S.C.A. § 305. Its applicability to the case at bar we cannot see. However that may be, this statute surely is not inconsistent with the procedure criticised here. It provides that all matters in which a hearing is required or desirable shall be heard as the Commission shall determine. And it provides that matters may be referred to a member or to an examiner and prescribes the procedure for matters so referred. It nowhere restricts the procedure in matters not so referred to a member or an examiner.

■ We think, therefore, that the plaintiff who appeared and participated in the hearing at Hartford, thereafter submitted his case by brief to Division 4 of the Commission, and thereafter unsuccessfully applied for a rehearing before the full Commission, can be said to have had a legal hearing in the fullest sense of that phrase, even though, as we hold, he was not entitled to such a hearing as a matter of right.

The plaintiff has advanced claims that the order of the Commission is in other respects defective. These subsidiary claims we have not overlooked; we deem them so lacking in substance as to require no discussion.

After the hearing on this case had been concluded and the case had been fully submitted on arguments and briefs the parties having stipulated in open court that the case might be deemed as fully submitted on the merits as well as upon the issues raised by the pending application for a preliminary injunction, one Inez R. Hall, as a shipper allegedly adversely affected by the proposed abandonment, was on motion and by stipulation of the parties permitted to intervene as a party plaintiff. Our comment and conclusions apply to the original plaintiff and to this intervening plaintiff alike; as to both the complaint should be dismissed.

An appropriate decree may be submitted by counsel for the Interstate Commerce Commission, with copies to the other parties who may have one week thereafter to file any desired exceptions to the form of the decree.