Sandor **SCHWARTZ**, Plaintiff,

v.

**ALLEGHANY CORPORATION, the Chesapeake & Ohio Railway Co., United States of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 66 Civ. 3912.**

United States District Court
S. D. New York.

April 3, 1968.

Sidney L. Garwin and Norman Annenberg, New York City, for plaintiff.

Donovan, Leisure, Newton & Irvine, New York City (Carl E. Newton, M. Lauck Walton, Ben Vinar and John J. McCann, New York City, of counsel), for defendant Alleghany Corp.

Hall, Casey, Dickler & Howley, New York City (John Howley, New York City, of counsel), for defendant Chesapeake & Ohio Railway Co.

John F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Robert M. Morgenthau, U. S. Atty., New York City, for defendant United States.

Robert W. Ginnane, Gen. Counsel, and Raymond M. Zimmet, Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Before SMITH, Circuit Judge, LEVET and MOTLEY, District Judges.

### MEMORANDUM ON MOTION TO DISMISS

J. JOSEPH SMITH, Circuit Judge.

This is a stockholder's derivative suit in which the plaintiff Schwartz, an owner and holder of shares in The Chesapeake & Ohio Railway Company since prior to January 1, 1953, seeks rescission of the sale by the C & O of its stock in the New York Central Railroad Company to Alleghany Corporation; a decree that on the date when Alleghany purchased the New York Central shares from the C & O it was subject to the terms of the Investment Company Act; and an award of the costs and expenses of the action includ-

ing reasonable counsel and accounting fees.

Plaintiff's complaint refers to Schwartz v. Bowman, 244 F.Supp. 51 (SDNY, 1965), affirmed on opinion below Annenberg v. Alleghany Corp., 360 F.2d 211 (2 Cir.), cert. denied Schwartz v. Eaton, 385 U.S. 921, 87 S.Ct. 230, 17 L.Ed.2d 145 (1966), stating that the action in that case was based upon substantially the same facts as this action and sought substantially the same relief, and that the action in that case had been dismissed for want of subject matter jurisdiction on the ground that the action had to be brought under the Urgent Deficiencies Act, 28 U.S.C. § 2321 et seq. The jurisdiction of this statutory three-judge court, plaintiff asserts, rests upon the Urgent Deficiencies Act.

Defendant Alleghany moves alternatively under Rules 12(b), 23.1 and 56(b) of the Federal Rules of Civil Procedure for an order dismissing plaintiff's complaint for failure to state a claim upon which relief can be granted. Defendant C & O joins in the motion. The United States and the ICC also argue that the complaint is fatally defective in failing to state which order(s) of the ICC are being attacked, in failing to show how such order(s) are erroneous, and in failing to show how plaintiff or his corporation (C & O) was legally injured by the order(s). The other defendants make similar arguments. All of the defendants argue that in seeking mandatory and declaratory relief, the complaint fails to state a claim upon which relief can be granted by this court. We have concluded that the motions are well taken and that the complaint must be dismissed.

For purposes of the motions to dismiss, the factual allegations of the complaint must, of course, be treated as if true. They are substantially as follows: From November 1940 to June 4, 1945, Alleghany was an investment corporation which had registered with the SEC; by order of the ICC dated June 5, 1945 the ICC authorized Alleghany to acquire control of the C & O and directed that Alleghany was to be considered as a carrier subject to sections 20 and 20a of the Interstate Commerce Act. Alleghany thereupon ceased to be subject to regulation by the SEC. (The Investment Company Act of 1940 expressly exempts from its application corporations which are subject to regulation under the Interstate Commerce Act; see 15 U.S.C. sec. 80a–3(c) (9)). Alleghany was in control of C & O until January 19, 1954. Between May 1937 and January 19, 1954, Robert R. Young and Allan B. Kirby owned 42%· of the voting shares of Alleghany and dominated its board of directors. Cyrus S. Eaton was a large stockholder of C & O and a close friend and business associate of Young and Kirby. For many years Young and Kirby had attempted to assume the management, etc. of the New York Central. In January and February 1954, the largest single block of New York Central stock was owned by the C & O. "In the latter part of 1953, the individuals who were directors of C & O prior to January 19, 1954, together with Alleghany and one Clint W. Murchison and one Sidney Richardson, entered into a plan and conspiracy which was joined by the individuals who became directors of C & O subsequent to January 19, 1954. The purpose of said conspiracy was to permit control of the C & O to be vested in Eaton at the expense of Alleghany, and to permit Young, Kirby, Murchison, Alleghany and Sidney Richardson to enrich themselves by acquiring control of the New York Central   *   *   *"

It is alleged that pursuant to the conspiracy Alleghany secretly sold its entire holdings of C & O stock to Eaton, and that control of the C & O was vested in Eaton and his nominees, and that the sale of stock was at a price substantially below the value of the control block of stock. The sale to Eaton was, plaintiff alleges, a condition precedent to the sale by C & O of 800,000 shares of New York Central stock to Alleghany. The fact of the latter sale is undisputed; and Alleghany's subsequent acquisition of control of the New York Central in May 1954, through a proxy fight, is of course all too familiar to the courts.

The heart of plaintiff's cause of action here is his contention that after the sale of the C & O stock by Alleghany to Eaton, Alleghany immediately became again an investment company within the purview of the Investment Company Act, and was required to register with the SEC; and that at the time of the purchase of the 800,000 New York Central shares Alleghany had failed to so register, rendering the stock purchase null and void and subject to rescission under section 47 of the Investment Company Act, 15 U.S.C. sec. 80a–46.

In Schwartz v. Bowman, supra, Judge van Pelt Bryan wrote a long and careful opinion in which he held, inter alia, that the 1945 order of the ICC subjecting Alleghany to ICC jurisdiction was not terminated until March 2, 1955. (See 244 F.Supp. at 60). This holding was based on an ICC (Division) order of that date stating that the 1945 order was terminated. In the proceeding leading to that order, Alleghany stockholders had argued (as Schwartz argues here) that Alleghany's sale of C & O stock automatically terminated Alleghany's subjection to ICC regulation. That argument was rejected. On May 24, 1955 the full Commission affirmed the Division order. Louisville & Jeffersonville Bridge & R. R. Merger, 295 I.C.C. 11 (May 24, 1955).

Having held that the 1945 ICC order was in effect during the 1954 transactions which are the subject matter of the complaint (and were the subject matter of the complaint in Schwartz v. Bowman), Judge van Pelt Bryan found that it followed that if the ICC orders are to be given effect, Alleghany was expressly exempt from the Investment Company Act at the time of those transactions; therefore, he held, plaintiff's action was necessarily an attack on the validity of the ICC orders. Since ICC orders can be reviewed only under the Urgent Deficiencies Act, the court lacked subject matter jurisdiction.

■ Plaintiff has now brought this action under the Urgent Deficiencies Act. The United States and the ICC contend that plaintiff's failure to participate in any Commission proceedings precludes his attacking the Commission's orders. This does not follow, however. If the orders are attacked as exceeding the power of the Commission, plaintiff may proceed here without having been a participant in the ICC proceedings. Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216 (1923). It is not clear, however, on what basis the orders are being attacked, or even that they are in fact being attacked in this action.

■ It seems to us clear that plaintiff has failed to state a claim on which relief may be granted. The only claim of which this court, constituted under the Urgent Deficiencies Act, can take cognizance is a claim that an ICC order or orders are invalid. But plaintiff now expressly disclaims any attack on an ICC order. This would seem to remove any claim to jurisdiction under the Urgent Deficiencies Act in either a three-judge or ordinary district court. If, on the present claims, jurisdiction exists in the district court to grant a declaratory judgment as to the applicability of the Investment Company Act, it would be before the court on some other basis of jurisdiction, not under the Urgent Deficiencies Act and not as a three-judge court. Powell v. United States, 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643 (1937); New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138 (1932).

We need not consider at this point whether the Court's ruling in Alleghany Corp. v. Breswick & Co., 353 U.S. 151 at 174–175, 77 S.Ct. 763, 1 L.Ed.2d 726, that Alleghany shareholders lacked sufficient "interest" to attack the merger-status order, would apply perhaps with added force to persons in the even more remote position of Plaintiffs, C & O shareholders.

As we have noted, apparently plaintiff's underlying contention is that events of 1954 made the 1945 ICC order no longer valid so that it should either be set aside by the courts or the courts

should declare that in 1954 it lost its effect as a bar to SEC control, but he advanced no ground for attack either on the 1945 order as entered, or on the 1955 orders which Judge van Pelt Bryan held a bar in Schwartz v. Bowman, supra.

Since plaintiff apparently seeks here a holding that in spite of the ICC rulings, Alleghany was subject to the registration requirements of the Investment Company Act once it disposed of its C & O stock, and does not attack the basis of the ICC rulings that Alleghany was still subject to ICC control, he has not stated a claim within our power to consider. This court as at present convened is concerned only with the validity of the ICC rulings and may not disturb them on any basis set forth by plaintiff. The motion to dismiss is granted under Fed.R.Civ.Proc. 12(b)(6) for failure to state a claim cognizable by this court under the Urgent Deficiencies Act.[1]

1. Since leave to amend is not sought, and no proposed amendment is before us, we intimate no view on whether the deficiencies herein could be cured by amendment to the complaint.