**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

THE STATE OF NEW MEXICO
*EX REL.* HECTOR H. BALDERAS,
Attorney General; THE NEW
MEXICO ENVIRONMENT
DEPARTMENT,

     Petitioners,

v.

UNITED STATES NUCLEAR
REGULATORY COMMISSION;
UNITED STATES OF AMERICA,

     Respondents.
_____

INTERIM STORAGE PARTNERS,
LLC,

     Intervenor - Respondent.

No. 21-9593

_____

**Petition for Review from the Nuclear Regulatory Commission**
**(NRC-1: 72-1050)**
_____

Submitted on the briefs[*]:

P. Cholla Khoury, William G. Grantham, and Zachary E. Ogaz, Assistant
Attorneys General, Office of the Attorney General for the State of New
Mexico, Albuquerque, New Mexico (Bruce C. Baizel, New Mexico

_____

[*]    We have determined that oral argument would not be helpful, so we
forgo oral argument. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

Environment Department, Office of General Counsel, Santa Fe, New Mexico, with them on the briefs), on behalf of the Petitioners.

Todd Kim, Assistant Attorney General, and Justin D. Heminger, Attorney, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C. (Marian L. Zobler, General Counsel, and Andrew P. Averbach, Solicitor, U.S. Nuclear Regulatory Commission, Office of the General Counsel, Rockville, Maryland, with them on the briefs), on behalf of the Respondents.

Brad Fagg, Timothy P. Matthews, and Ryan K. Lighty, Morgan, Lewis & Bockius LLP, Washington, D.C., on behalf of the Intervenor-Respondent.

_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This petition involves an agency's regulation of private storage of nuclear fuel. The agency, the Nuclear Regulatory Commission, granted a license to Interim Storage Partners to store spent nuclear fuel near the New Mexico border. New Mexico challenges the grant of this license, invoking the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.

The Commission moves to dismiss for lack of jurisdiction. Objecting to the motion, New Mexico invokes jurisdiction under the combination of the Hobbs Act, 28 U.S.C. §§ 2342(4), 2344, and the Atomic Energy Act, 42 U.S.C. §§ 2011–2296b-7. But these statutes can combine to trigger jurisdiction only when the petitioner was an aggrieved party in the licensing proceeding.

2

This limitation applies here because New Mexico didn't participate in the licensing proceeding or qualify as an aggrieved party. To the contrary, New Mexico just commented to the Commission about its draft environmental impact statement. Commenting on the environmental impact statement didn't create status as an aggrieved party, so jurisdiction isn't triggered under the combination of the Hobbs Act and Atomic Energy Act.

New Mexico not only invokes the Hobbs Act and Atomic Energy Act, but also alleges that the Commission violated the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101–10270, and acted *ultra vires*. These allegations don't trigger our jurisdiction. The Nuclear Waste Policy Act governs the establishment of a federal repository for permanent storage—not temporary storage by private parties like Interim Storage. And even when an agency acts *ultra vires*, we lack jurisdiction when the petitioner had other available remedies. New Mexico had other available remedies by seeking intervention in the Commission's proceedings. So we grant the Commission's motion to dismiss the petition for lack of jurisdiction.

**1.     The Nuclear Regulatory Commission granted a temporary license to Interim Storage.**

The Nuclear Regulatory Commission bears the authority to license the private use of facilities to store spent nuclear fuel. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 206–207 (1983); *Skull Valley Band Of Goshute Indians v. Nielson*, 376 F.3d

3

1223, 1232 (10th Cir. 2004). Based on this authority, the Commission conducted proceedings to address Interim Storage's application for a license. *See* Interim Storage Partner's Waste Control Specialists Consolidated Interim Storage Facility, 83 Fed. Reg. 44,070 (Aug. 29, 2018), *corrected*, 83 Fed. Reg. 44,680 (Aug. 31, 2018) (public notice of Interim Storage's application for a license).

To facilitate public participation, the Commission issued a notice stating that any interested entity could request a hearing. *Id.* at 44,071 ("[A]ny persons . . . whose interest may be affected by this action may file a request for a hearing and petition for leave to intervene."). This notice stated what the entity would need to include and explained that permission to intervene would create status as a party. *Id.* Despite this notice, New Mexico didn't request a hearing or petition to intervene in the licensing proceeding.

The licensing proceeding closed over a year after the Commission had issued the notice. *See In the Matter of Interim Storage Partners LLC*, LBP-19-11, Docket No. 72-1050-ISFSI, Mem. & Order at 14 (Dec. 13, 2019) (statement by the Atomic Safety and Licensing Board that the Interim Storage proceeding had terminated). After the proceeding closed, the Nuclear Regulatory Commission prepared a draft environmental impact statement, as required by federal regulations and the National

Environmental Policy Act. *See* R. vol. 3, at 83; 42 U.S.C. § 4332(C); 10 C.F.R. § 51.20(a), (b)(9).

With preparation of this draft, the Commission notified the public and invited comments. Interim Storage Partners Consolidated Interim Storage Facility Project, 85 Fed. Reg. 27,447-03 (May 8, 2020). New Mexico commented, criticizing the draft. R. vol. 4, at 931–41, 947–52 (comments by Michelle Lujan Grisham, Governor of New Mexico, the New Mexico Environment Department, and the New Mexico Energy, Minerals and Natural Resources Department). The Commission responded to New Mexico in the final version of the environmental impact statement. *See, e.g.*, R. vol. 3, at 734, 737, 739–40 (designating Michelle Lujan Grisham as commenter 81 and officials from the New Mexico agencies as commenters 60-22, 152, and 155); R. vol. 3, at 561–62, 564, 565, 583–85, 593, 596, 599–600, 602–05, 606–07, 635–37, 638–39, 645–47, 648–49, 651–52, 652–53, 653–56, 662–63, 667–68, 669–72, 673–77, 703, 705–06, 706–08, 709–10, 713–15, 728 (responding to commenters 60-22, 81, 152, and 155).

The Nuclear Regulatory Commission ultimately granted a temporary license to Interim Storage to construct and operate a facility to store spent nuclear fuel. Interim Storage Partners, LLC; WCS Consolidated Interim Storage Facility; Issuance of Materials License and Record of Decision, 86 Fed. Reg. 51,926-02 (Sept. 17, 2021); *id.* at 51,927 ("The license authorizes [Interim Storage] to store . . . spent nuclear fuel for a license

period of 40 years."). New Mexico petitions for us to review the grant of this license, and the Commission challenges our jurisdiction over New Mexico's petition.

**2.      We lack jurisdiction under the Hobbs Act because New Mexico wasn't a "party aggrieved" by the Commission's final order.**

The Hobbs Act creates federal appellate jurisdiction over the Nuclear Regulatory Commission's final orders as defined in 42 U.S.C. § 2239.[1] 28 U.S.C. § 2342(4). In turn, § 2239 authorizes review of final orders that grant, suspend, revoke, or amend a license. 42 U.S.C. § 2239(a)(1)(A), (b)(1).

This jurisdiction can be invoked only by "aggrieved" parties. *See* 28 U.S.C. § 2344 (stating that "[a]ny party aggrieved by the final order may . . . file a petition to review the order in the court of appeals wherein venue lies"). So we consider whether New Mexico qualifies as an aggrieved party.

**A.      We must assess New Mexico's status as a party based on its participation in the administrative proceedings.**

Status as an "aggrieved party" would exist only if we regard New Mexico as a party to the administrative proceeding. *See ACA Int'l v. Fed.*

---

[1]      The Hobbs Act refers to final orders of the Atomic Energy Commission. 28 U.S.C. § 2342(4). Congress later abolished the Atomic Energy Commission and transferred licensing and regulatory functions to the newly created Nuclear Regulatory Commission. 42 U.S.C. § 5814(a), § 5841(f).

*Commc'ns Comm'n*, 885 F.3d 687, 711 (D.C. Cir. 2018) ("[T]he phrase 'party aggrieved' requires that petitioners have been parties to the underlying agency proceedings, not simply parties to the present suit who are aggrieved in a constitutional (Article III) sense."). To assess status as a party, we evaluate the level of participation required in the administrative proceeding. *Water Transp. Ass'n v. I.C.C.*, 819 F.2d 1189, 1192 (D.C. Cir. 1987). We evaluate that participation based on the practices of the agency and the formality of the proceeding. *See id.*

In making this evaluation, we're not bound by the Commission's description of the entity as a party. *See id.*; *Clark & Reid Co. v. United States*, 804 F.2d 3, 6 (1st Cir. 1986). We instead consider whether New Mexico had participated appropriately under the available administrative procedures. *See Gage v. U.S. Atomic Energy Comm'n*, 479 F.2d 1214, 1217 (D.C. Cir. 1973) (concluding that the court lacked jurisdiction to review an Atomic Energy Commission order because the petitioner had "refrained from participating in the appropriate and available administrative procedure"). For example, if the Commission had required intervention and New Mexico didn't seek leave to intervene, we would lack jurisdiction under the Hobbs Act. *Water Transp. Ass'n*, 819 F.2d at 1192.

**B.     New Mexico did not participate in the licensing proceeding.**

We consider whether New Mexico needed to seek leave to intervene in the Commission's licensing proceeding. In this inquiry, we are guided

7

by the Atomic Energy Act and its regulations. *See Ohio Nuclear-free Network v. U.S. Nuclear Regul. Comm'n*, 53 F.4th 236, 239–40 (D.C. Cir. 2022). Under the Act, anyone interested in a licensing proceeding can request a hearing. 42 U.S.C. § 2239(a)(1)(A). The Commission must

- grant interested entities a hearing upon request and

- admit the entity as a party to the proceeding.

*Id.*

The regulations specify how entities are to request a hearing. For example, an interested entity must file a written request and specify the contentions for the hearing. 10 C.F.R. § 2.309(a). The agency will grant the request if the entity

- has proposed a contention that's within the scope of the proceedings and material to the findings that the Commission must make, s*ee* 10 C.F.R. § 2.309(f) (stating the requirements for a contention to be admissible), and

- has standing, *see* 10 C.F.R. § 2.309(d) (stating the requirements for standing).

And if an interested party unsuccessfully requests a hearing, the party can appeal to the Commission. *See* 10 C.F.R. § 2.311(c) ("An order denying a petition to intervene, and/or request for hearing . . . is appealable by the requestor/petitioner on the question as to whether the request and/or petition should have been granted.").

New Mexico didn't seek leave to intervene, request a hearing, or submit contentions. New Mexico instead commented on the Commission's

8

draft of the environmental impact statement. By choosing only to comment, New Mexico bypassed the chance to participate as a party in the licensing proceeding. *See Gage v. U.S. Atomic Energy Comm'n*, 479 F.2d 1214, 1217 (D.C. Cir. 1973); *see also Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 823 F.3d 641, 643 (D.C. Cir. 2016) ("To challenge the Commission's grant of a license renewal, . . . a party must have successfully intervened in the proceeding by submitting adequate contentions under 10 C.F.R. § 2.309."). Given the failure to take advantage of that chance, New Mexico doesn't qualify as an aggrieved party under the Hobbs Act. *See Ohio Nuclear-free Network v. U.S. Nuclear Regul. Comm'n*, 53 F.4th 236, 240 (D.C. Cir. 2022) (concluding that the petitioners weren't parties aggrieved under the Hobbs Act when they emailed a letter rather than request a hearing or submit contentions related to the license).[2]

---

[2] New Mexico points out that it unsuccessfully petitioned to suspend, revoke, and stay the license and sought a hearing in connection with that petition. Resp. to Mot. to Dismiss at 3 n. 1; *see* 10 C.F.R. § 2.206 ("Any person may file a request to institute a proceeding pursuant to § 2.202 to modify, suspend, or revoke a license."). We don't rule out the possibility of jurisdiction to address the denial of that petition. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 741 (1985) ("Congress intended to vest in the courts of appeals initial subject-matter jurisdiction over challenges to Commission denials of § 2.206 petitions."). But New Mexico is challenging issuance of the license itself rather than the refusal to suspend, revoke, or stay the license.

Granted, some cases regard submission of comments as enough in rulemaking proceedings, where the agency solicits input through comments rather than intervention or submission of contentions. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 711 (D.C. Cir. 2018) ("Just as submitting comments confers party aggrieved status in the context of a rulemaking (assuming an adverse outcome), one who comments on another's petition for a rulemaking or declaratory ruling has presented its view to the agency so as to qualify as a party." (cleaned up)). New Mexico invokes these cases, arguing that status as a "party" is the same when an agency conducts rulemaking and adjudicative proceedings. For this argument, New Mexico questions the distinction between rulemaking and adjudication.

New Mexico's argument overlooks the Commission's requirements for appropriate participation. Regardless of whether an agency is enacting a rule or adjudicating a dispute, we consider an entity a "party" only if it "participat[es] in the appropriate and available administrative procedure." *Gage v. U.S. Atomic Energy Comm'n*, 479 F.2d 1214, 1217 (D.C. Cir. 1973). The appropriateness and availability of these procedures differ when agencies enact rules and adjudicate disputes.

Here we must consider the administrative procedures available under the rules accompanying the Atomic Energy Act.[3] Under these rules, New Mexico needed to raise its claims by submitting contentions and requesting a hearing or petitioning to intervene. *See* pp. 8–9, above. And for the claims involving the National Environmental Policy Act, New Mexico needed to frame the contentions based on Interim Storage's environmental report. *See* 10 C.F.R. § 2.309(f)(2) (stating that for "issues arising under the National Environmental Policy Act, participants shall file contentions based on the applicant's environmental report"); *Ohio Nuclear-free Network v. U.S. Nuclear Regul. Comm'n*, 53 F.4th 236, 240 (D.C. Cir. 2022) (concluding that a person seeking to intervene in a licensing proceeding under the Atomic Energy Act "must request a hearing or otherwise intervene in the proceeding as required by the [Act] and its regulations," which includes persons "who object to the agency's discharge of its [National Environmental Policy Act] duties"); *see also Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 823 F.3d 641, 652 (D.C. Cir.

---

[3]    Though New Mexico invoked the National Environmental Policy Act, this invocation couldn't trigger jurisdiction because the statute doesn't create an independent cause of action. *See Diné Citizens Against Ruining Our Environment v. Haaland*, ___F.4th ___, No. 21-2116, slip op. at 14 (10th Cir. Feb. 1, 2023) (stating that the "[National Environmental Policy Act] does not create a cause of action"); *Ohio Nuclear-free Network v. U.S. Nuclear Regul. Comm'n*, 53 4th 236, 240 (D.C. Cir. 2022) (stating that assertion of objections under the National Energy Policy Act doesn't create jurisdiction over challenges to an amended license).

2016) (stating that the National Environmental Policy Act "does not, by its own terms or its intent, alter the Commission's hearing procedures" (quoting *Beyond Nuclear v. U.S. Nuclear Regul. Comm'n*, 704 F.3d at 12, 18 (1st Cir. 2013))).[4] Given the failure to submit contentions, request a hearing, or petition to intervene, New Mexico did not participate appropriately based on the Commission's practices and the formality of the proceeding.

### C.    New Mexico could have raised its environmental objections by submitting contentions about Interim Storage's environmental report.

New Mexico observes that the adjudicatory proceeding had closed before the Commission issued the draft environmental impact statement. Based on this observation as to the timing, New Mexico insists that public comments provided the only chance to address the Commission's draft. But New Mexico overlooks the relationship between Interim Storage's environmental report and the Commission's environmental impact statement.

In applying for a license, Interim Storage had to submit an environmental report, addressing all of the considerations required under

---

[4]    The Nuclear Regulatory Commission argues not only that we lack jurisdiction but also that New Mexico had failed to exhaust available administrative remedies. We need not address the exhaustion issue because jurisdiction doesn't exist.

the National Environmental Policy Act. 42 U.S.C. § 4332(C); 10 C.F.R.

§ 51.45(b). The Commission then had to prepare an environmental impact

statement to evaluate and document the environmental impacts. *See* 10

C.F.R. § 51.20(b)(9) (requiring the preparation of an environmental impact

statement before the agency can issue a license to store spent nuclear fuel);

*see also Ohio Nuclear-free Network v. U.S. Nuclear Regul. Comm'n*, 53

F.4th 236, 237 (D.C. Cir. 2022) ("[The National Environmental Policy Act]

requires all federal agencies to document the environmental impacts of

certain proposed federal actions."). So if New Mexico had environmental

concerns, it could have asserted contentions and requested a hearing when

Interim Storage submitted its environmental report. 10 C.F.R.

§ 2.309(f)(2); *see* p. 11, above.

In fact, many of New Mexico's criticisms of the environmental

impact statement appear equally applicable to the environmental report.[5]

For example, New Mexico makes three criticisms of the environmental

impact statement based on its

---

[5]   Interim Storage's environmental report doesn't appear in the record. But the report is subject to judicial notice because it's publicly available on the Commission's website. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212–13 (10th Cir. 2012) (taking judicial notice of the existence of "documents filed with [an agency] and now available on the agency's public website"). We're considering the environmental report only for its contents—not to prove the truth of those contents. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (concluding that the court can take judicial notice of public documents to show their contents but not to prove the truth of matters stated).

- assumptions about the eventual availability of a federal repository and cost of transportation to a permanent repository,

- failure to consider the possibility of terrorism or New Mexico's cost to use the Texas-New Mexico rail line, and

- failure to consult New Mexico.

All of these criticisms involve matters that had appeared in Interim Storage's environmental report.

First, New Mexico petitions for judicial review based on the Commission's assumption involving a permanent repository and future transportation costs to the repository. For example, New Mexico criticizes the environmental impact statement for assuming the existence of a permanent repository by 2048. Petitioner's Opening Br. at 33–35. But this assumption also appeared in Interim Storage's environmental report. WCS Consolidated Interim Spent Fuel Storage Facility Environmental Report (Rev. 2), 72-1050, at 1-5 ("[T]he earliest estimated time by which a permanent geologic repository could be licensed and operational is 2048.").

New Mexico also argues here that the environmental impact statement mistakenly assumed the cost of transportation even though a permanent repository doesn't yet exist. Petitioner's Opening Br. at 36. But Interim Storage's environmental report had made the same assumptions despite the absence of a permanent repository. *See* WCS Consolidated Interim Spent Fuel Storage Facility Environmental Report (Rev. 2), 72-

1050, at 4-12, 4-16 (assuming shipments from the facility would be to "the proposed repository at Yucca Mountain in Nye County, Nevada").

Second, New Mexico criticizes the environmental impact statement for factors that were overlooked. For example, New Mexico argues that the environmental impact statement failed to account for New Mexico's cost to use the Texas-New Mexico rail line. Petitioner's Opening Br. at 40–41. But the same was true of Interim Storage's environmental report. WCS Consolidated Interim Spent Fuel Storage Facility Environmental Report (Rev. 2), 72-1050, at 3-5, 3-7.

New Mexico also argues that the environmental impact statement omitted an assessment of possible terrorism. Petitioner's Opening Br. at 44–46. But Interim Storage's environmental report contained the same omission.

Third, New Mexico argues that it should have been able to provide input into the environmental impact statement. Petitioner's Opening Br. at 46. But in its environmental report, Interim Storage had omitted the New Mexico environmental agencies in the list of entities to be consulted. *See* WCS Consolidated Interim Spent Fuel Storage Facility Environmental Report (Rev. 2), 72-1050, at 1-7.[6]

---

[6]    The only New Mexico entity listed was the New Mexico State Historic Preservation Office. *See* WCS Consolidated Interim Spent Fuel Storage Facility Environmental Report (Rev. 2), 72-1050, at 1-14.

15

As these examples indicate, Interim Storage's environmental report shared many of the features that New Mexico criticizes. And New Mexico had access to that environmental report when Interim Storage requested a license. New Mexico thus had a chance to object to many of the features reappearing in the Commission's draft of the environmental impact statement.

With contentions and a request for a hearing or a petition for leave to intervene, New Mexico could later have filed new or amended contentions to challenge the environmental impact statement. *See* 10 C.F.R. § 2.309(f)(2) (stating that participants can "file new or amended environmental contentions after the deadline . . . based on a draft or final [Nuclear Regulatory Commission] environmental impact statement"). So New Mexico could have raised its current arguments even though the Commission had closed the administrative record before issuing the draft environmental impact statement.

**3.    We lack jurisdiction under the Nuclear Waste Policy Act because it does not govern Interim Storage's license.**

New Mexico also invokes the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101–10270. This statute addresses plans to develop a federal repository for storing spent nuclear fuel. *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1242 (10th Cir. 2004).

The Nuclear Waste Policy Act provides federal appellate jurisdiction over challenges to an environmental impact statement prepared with respect to an action under Part A of the statute. *See* 42 U.S.C. § 10139(a)(1)(D) (granting original jurisdiction to the federal courts of appeal to review environmental impact statements prepared with respect to an action under "this part," which is Part A).[7] But the Commission did not prepare the environmental impact statement with respect to an action under Part A.

Part A "establishe[s] a schedule for siting, construction, and operation of a permanent federal repository." *Bullcreek v. Nuclear Regul. Comm'n*, 359 F.3d 536, 538 (D.C. Cir. 2004); 42 U.S.C. §§ 10131–10145, 10101(18) (defining "repository" under Part A as "any system licensed by the Commission that is intended to be used for, or may be used for, the *permanent* deep geologic disposal of . . . spent nuclear fuel" (emphasis added)); *see also Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1242 (10th Cir. 2004) (stating that Part A establishes "a

---

[7]    Section 10139(a)(1)(D) also creates jurisdiction "for review of any environmental impact statement prepared pursuant to [the National Environmental Policy Act] . . . as required under section 10155(c)(1) of this title." 42 U.S.C. § 10139(a)(1)(D). Section 10155(c)(1) requires an environmental impact statement for certain sites owned by the federal government. 42 U.S.C. § 10155(c)(1). Because Interim Storage is a private entity, § 10155(c)(1) does not apply.

17

schedule for developing a permanent federal repository"). But Interim Storage's facility and license are neither permanent nor federal.

The license is temporary, as it will expire in 40 years. During this period, Interim Storage can store spent nuclear fuel. R. vol. 4, at 827. Because the license is temporary, Part A doesn't apply.

New Mexico argues that Interim Storage's facility could become a de facto permanent warehouse for storage, pointing to uncertainty over the feasibility of a permanent repository for spent nuclear fuel. We reject this argument.

Though we don't know whether the government will complete a permanent repository, Interim Storage's license would remain temporary either way because of the 40-year term. By the end of the 40-year period, Interim Storage would need to seek renewal. If the Nuclear Regulatory Commission were to decline renewal of the license, Interim Storage couldn't continue to use the facility to store spent nuclear fuel. *See* 10 C.F.R. § 72.54. So the possibility of renewal doesn't make the license permanent.

Even if the license were permanent, however, Part A wouldn't govern because the storage facility is owned and operated by a private entity (Interim Storage). Because the entity is private, the Commission relied on the Atomic Energy Act, which authorizes licensing and regulation of "*private use* of *private* away-from-reactor spent fuel storage facilities."

18

*Bullcreek v. Nuclear Regul. Comm'n*, 359 F.3d 536, 542 (D.C. Cir. 2004) (emphasis added); *see* R. vol. 4, at 827 (the Interim Storage license stating that it was issued "[p]ursuant to the Atomic Energy Act of 1954"). So the license does not concern a federal facility.

New Mexico points out that the license refers to the Department of Energy, suggesting that the reference implies that the federal government will use the facility. This suggestion reflects a misunderstanding of the license. The license says that operations can't start until Interim Storage obtains a contract with the U.S. Department of Energy or another title-holder that's "responsible for funding operations." R. vol. 4, at 829. This provision allocates responsibility for funding operations, ensuring that whoever owns the nuclear fuel will pay for the storage. (If the Department of Energy owned the nuclear fuel, the Department would pay for the storage; if a private entity owned the fuel, the private entity would pay.) That provision doesn't

- authorize the federal government to store its spent nuclear fuel at the facility or

- make the federal government the licensee or operator of the storage facility.

*See Don't Waste Michigan v. U.S. Nuclear Regul. Comm'n*, No. 21-1048, 2023 WL 395030, at *2 (D.C. Cir. Jan. 25, 2023) (per curiam; unpublished) (interpreting the same language and concluding that it does not make the

Department of Energy responsible for the spent nuclear fuel being stored at Interim Storage's private facility).

New Mexico also argues that the environmental impact statement, record of decision, and issuance of the license are "inextricably linked to actions taken pursuant to [the Nuclear Waste Policy Act] provisions." Resp. to Mot. to Dismiss at 13. New Mexico points to the Nuclear Regulatory Commission's

- reliance on a previous determination that a permanent repository would be available by 2048, R. vol. 3, at 134,

- discussion that the facility is needed for storage capacity before a permanent repository is available, *id.* at 115,

- assumption that spent nuclear fuel will be moved to a permanent repository, *id.* at 172–73, and

- reference to the Department of Energy's analyses, *id.* at 286.

These references don't show the issuance of an action under the Nuclear Waste Policy Act. *See* 42 U.S.C. § 10139(a)(1)(D). After all, the Commission didn't prepare the environmental impact statement for a facility that was permanent or operated by the federal government.

* * *

The Commission didn't issue the environmental impact statement based on an action under Part A of the Nuclear Waste Policy Act. So this Act doesn't trigger jurisdiction.

**4.** **We would lack jurisdiction even if the Commission had acted *ultra vires*.**

New Mexico also argues that we have jurisdiction because the Nuclear Regulatory Commission acted *ultra vires*. We disagree.

District courts can review administrative actions when an agency acts *ultra vires* if no court could otherwise review the action. *See Quivira Mining Co. v. U.S.E.P.A.*, 728 F.2d 477, 484 (10th Cir. 1984) ("[*Leedom v. Kyne*, 358 U.S. 184, 190 (1958)] stands for the proposition that *ultra vires* agency action may be reviewed by the district courts, notwithstanding exclusive court of appeals review provisions, when no relief is otherwise available.").

New Mexico argues that we obtained jurisdiction because the Commission acted *ultra vires*. But even if the Commission had acted *ultra vires*, New Mexico could have obtained judicial review by participating in the Commission's proceedings through submitting contentions and a request for a hearing or petition for leave to intervene. This opportunity prevents New Mexico from invoking this exception even if the Commission had acted *ultra vires*. *See id.* (rejecting a claim that the district court had jurisdiction despite a provision for exclusive appellate review because the plaintiffs had bypassed opportunities to challenge the regulation).

New Mexico urges an exception that would create jurisdiction regardless of the possibility of administrative action. In urging this

21

exception, New Mexico relies on a Fifth Circuit opinion—*American Trucking Associations, Inc. v. I.C.C.*, 673 F.2d 82, 85 n.4 (5th Cir. 1982) (per curiam)—which permitted review "if the agency action is 'attacked as exceeding the power of the Commission.'" *Id.* at 85 n.4 (quoting *Schwartz v. Alleghany Corp.*, 282 F. Supp. 161, 163 (S.D.N.Y. 1968)).

Most circuits have declined to follow *American Trucking. See Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 799 F.2d 317, 334–35 (7th Cir. 1986) (deciding not to follow *American Trucking* and concluding that "[t]he statute limits review to petitions filed by parties, and that is that"); *Erie-Niagara Rail Steering Comm. v. Surface Transp. Bd.*, 167 F.3d 111, 112 (2d Cir. 1999) (characterizing *American Trucking*'s exceptions as unpersuasive dicta); *Nat'l Ass'n Of State Util. Consumer Advocs. v. F.C.C.*, 457 F.3d 1238, 1249 (11th Cir.), *opinion modified on denial of reh'g*, 468 F.3d 1272 (11th Cir. 2006) (declining to follow *American Trucking* and stating that a party is aggrieved when it "participated in the agency proceeding" (quoting *Alabama Power Co. v. F.C.C.*, 311 F.3d 1357, 1366 (11th Cir. 2002))); *cf. Baros v. Texas Mexican Ry. Co.*, 400 F.3d 228, 238 n.24 (5th Cir. 2005) (recognizing that *American Trucking* has "been squarely rejected by some of our sister circuits"). We agree with these courts, concluding that non-parties cannot appeal orders that "exceed the power" of the agency because

22

- "'exceeding the power' of the agency may be a synonym for 'wrong,' so that the statute then precludes review only when there is no reason for review anyway" and

- "[the Hobbs Act] is the source of the court's jurisdiction, . . . [a] court may not decide a case just because that would be a good idea; power must be granted, not assumed."

*Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 799 F.2d 317, 335 (7th Cir. 1986).

Nor does *American Trucking* support New Mexico's reliance on the exception for *ultra vires* action. There the Fifth Circuit concluded that "it is incumbent upon an interested person *to act affirmatively* to protect himself in administrative proceedings, and . . . (s)uch a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated." *Am. Trucking Associations, Inc.*, 673 F.2d at 84 (quoting *Nader v. Nuclear Regul. Comm'n*, 513 F.2d 1045, 1054 (D.C. Cir. 1975)) (emphasis added) (internal quotation marks omitted). Given the need for affirmative action to protect oneself, reliance on *American Trucking* is misplaced because New Mexico could have participated in the licensing proceeding.

Because *American Trucking* is neither persuasive nor applicable, jurisdiction wouldn't exist even if the Commission had acted *ultra vires*.

5.    **Conclusion**

We dismiss the petition for lack of jurisdiction. The Hobbs Act and Atomic Energy Act don't trigger jurisdiction because New Mexico didn't

take advantage of the chance to participate in the Commission's licensing proceeding. Nor does jurisdiction exist under the Nuclear Waste Policy Act, for the Commission didn't issue the environmental impact statement with respect to an action under Part A of the Act. And even if the Commission had acted *ultra vires*, we'd lack jurisdiction because New Mexico could otherwise have asserted its arguments in the licensing proceeding.