# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2024

Lyle W. Cayce
Clerk

_____

No. 21-60743

_____

STATE OF TEXAS; GREG ABBOTT, *Governor of the State of Texas*; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; FASKEN LAND AND MINERALS, LIMITED; PERMIAN BASIN LAND AND ROYALTY OWNERS,

*Petitioners*,

*versus*

NUCLEAR REGULATORY COMMISSION; UNITED STATES OF AMERICA,

*Respondents*.

_____

Appeal from the Nuclear Regulatory Commission
Agency No. 72-1050

_____

## ON PETITION FOR REHEARING EN BANC

Before JONES, HO, and WILSON, *Circuit Judges*.

PER CURIAM:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. 35, 36 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

In the en banc poll, seven judges voted in favor of rehearing en banc (Stewart, Southwick, Graves, Higginson, Willett, Douglas, and Ramirez), and nine voted against rehearing en banc (Richman, Jones, Smith, Elrod, Haynes, Ho, Duncan, Engelhardt, and Wilson).

Judge Oldham is recused and did not participate in the poll.

No. 21-60743, State of Texas v. Nuclear Regulatory Comm'n

Edith H. Jones, *Circuit Judge*, joined by Smith, Elrod, Ho, Engelhardt, and Wilson, *Circuit Judges*, concurring in the denial of rehearing en banc:

The panel previously identified two bases of authority to review the NRC's proposed action to redirect the storage of nuclear energy waste away from Yucca Mountain, in conflict with federal law: these petitioners are parties aggrieved, and the NRC has acted *ultra vires*. The dissent challenges both grounds of jurisdiction. We continue to adhere to our position that the judiciary has not only the authority but the duty to review the NRC's actions, which may threaten significant environmental damage in the Permian Basin, one of the largest fossil fuel deposits in the world.

## 1. "Party Aggrieved"

Who has the ability to secure judicial review of this particular licensing decision? There's no question of Article III standing for the petitioners. Also, there's no question that Fasken (shorthand for petitioning mineral operators and landowners neighboring the proposed storage site) is "aggrieved." Nor that the state of Texas, which submitted comments and later passed a law prohibiting such storage, is "aggrieved." The argument is made that under Section 2344 of the Hobbs Act, "parties aggrieved" who may seek judicial review means only those whom the agency permitted to intervene in the licensing proceeding. But here, Fasken's multiple attempts formally to intervene were repeatedly rebuffed by the agency. *See Texas v. NRC* 78 F.4th 827, 834. If this argument is accepted, in other words, the NRC controls the courthouse door through its authority to determine who may be "parties" to licensing proceedings. And the state of Texas, which didn't formally attempt to intervene but made its position plainly known to NRC, has no access to judicial review at all.

The question of our jurisdiction is therefore bound up with fundamental principles governing review of agency decisions. Specifically, the courts default in our duty to "say what the law is" (i.e., *Marbury v Madison*, 1 Cranch 137 (1803)) if we enable the agency to be the unilateral "decider" of the statutory term "party aggrieved." *Massachusetts v. NRC,* 878 F.2d 1516, 1520 (1st Cir. 1989). Our duty is reinforced by the oft-stated "strong presumption" that a statute should be read in a way that accords with the "basic[] principle" that agency actions are "subject to judicial review." *Guerrero-Lasparilla v. Barr,* 140 S. Ct. 1062, 1069 (2020); *Bowen v. Mich. Acad. Of Family Physicians,* 476 U.S. 667, 670, 106 S. Ct. 2133, 2135 (1986) (noting "the strong presumption that Congress intends judicial review of administrative action"); *Kirby Corp. v. Pena*, 109 F.3d 258, 261 (5th Cir. 1997) ("There is a 'strong presumption' that Congress intends there to be judicial review of administrative agency action, . . . and the government bears a 'heavy burden' when arguing that Congress meant to prohibit all judicial review") (citations omitted)); *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988) ("If the wording of a preclusion clause is less than absolute, . . . [j]udicial review is favored when an agency is charged with acting beyond its authority."). A holding that courts cannot decide who are aggrieved parties according to the statutory language is not only contrary to these principles but also seems particularly unlikely in a legal world where deference to agency interpretations of law, e.g., in *Auer* and *Chevron*, is under increasing scrutiny.

The contrary position of judicial abdication rests on a provision of the Atomic Energy Act that allegedly constitutes "the only process" by which the [NRC] could make a "party": "[T]he Commission shall grant a hearing upon the request of *any person who may be affected* by the proceeding, and *shall admit any such person* as a party to such proceeding." 42 U.S.C. § 2239(a)(1)(A) (emphasis added). Given the breadth of NRC's statutory

charge to allow "affected persons" to be made "parties," it seems paradoxical to resort to the Hobbs Act to disable Fasken and Texas from judicial review by agency fiat. More specifically, with respect to the NRC's proffered interpretation, there are two responses. First, the D.C. Circuit has interpreted the term "parties aggrieved" more broadly than simply those who were joined as formal parties by the agency to administrative proceedings. Second, to the extent a couple of courts have rigidly used the term "parties" to mean only those formally admitted in agency proceedings, those decisions are either distinguishable or wrong.

With a couple of exceptions noted below, the term "party aggrieved" for judicial review purposes has been interpreted flexibly by the D.C. Circuit itself. Beginning with *Simmons v. ICC*, 716 F.2d 40, 42 (D.C. Cir. 1983), then-judge Scalia laid the groundwork for interpreting that phrase as he held that "party aggrieved" means more than "person aggrieved" for purposes of Administrative Procedure Act judicial review.[1] 5 U.S.C. § 702 ("A *person* suffering legal wrong because of agency action, or adversely affected or *aggrieved* by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." (emphasis added)). We don't dispute that terminological distinction. But shortly afterward, the D.C. Circuit held that "party aggrieved" under the Hobbs Act must be interpreted flexibly in light of the nature of the administrative proceeding. *Water Transp. Ass'n v. ICC,* 819 F.2d 1189, 1192 (D.C. Cir. 1987); *see also ACA Int'l v. Fed. Communications Comm'n*, 885 F.3d 687, 711 (D.C. Cir. 2018); *Reyblatt v NRC,* 105 F.3d 715, 720 (D.C. Cir. 1997) (submitting comments in a rulemaking proceeding confers "party" status for Hobbs Act purposes). The

---

[1] Judge Scalia cites this court's decision in *American Trucking Associations, Inc. v. ICC,* 673 F.2d 82, 84 (5th Cir. 1982), *cert. denied,* 103 S. Ct. 1272 (1983), as being in accord with the "party" requirement. We don't dispute this either.

court held in *Water Transp.* that the "degree of participation necessary to achieve party status varies according to the formality with which the proceeding was conducted." 819 F.2d at 1192.

Decisions from other courts concur. *See Nat'l Ass'n Of State Util. Consumer Advocates v. FCC*, 457 F.3d 1238, 1250 (11th Cir. 2006) (holding that entities "participated in the proceedings" and "independently established their status as 'party aggrieved' by "submitting comments and notice of ex parte communications"), *opinion modified on denial of reh'g*, 468 F.3d 1272 (11th Cir. 2006); *Clark & Reid Co., Inc. v. United States*, 804 F.2d 3, 6 (1st Cir. 1986) ("[W]e do not equate the regulatory definition of a 'party' in an ICC proceeding with the participatory party status required for judicial review under the Hobbs Act"); *Am. Civil Liberties Union v. FCC*, 774 F.2d 24, 26 (1st Cir. 1985) (observing that entities could have "participate[d] in the proceedings or review process as individual parties" if they had "filed comments with the agency or petitioned for reconsideration of the FCC's final order"). Another indicium of the necessity for a practical judicial interpretation of this term arises from the fact that the Hobbs Act covers several quite different agencies and several types of proceedings: rulemaking, adjudication, and licensing. What makes for "party aggrieved" should be consistently interpreted and not left to the varying rules of practice of each agency for each type of proceeding.

*Simmons* itself supports finding that Fasken and Texas are each a "party aggrieved." *Simmons* was a challenge to an ICC ratemaking proceeding, and the court held that Simmons, who had participated "by submitting comments" in another aspect of the proceeding (the "railroad docket") could not be a "party aggrieved" as to the "motor carrier docket" aspect in which it had filed nothing. *Simmons,* 716 F.2d at 42, 45. The court's analysis centered on whether to allow Simmons to challenge the outcome of that part of the proceeding where it hadn't submitted any comments at all.

That Simmons had standing under the Hobbs Act to challenge the deregulatory rule on the railroad docket—by virtue of filing comments—was uncontested. By analogy here, Fasken "participated" in the proceeding with comments, submissions, attendance at hearings, and factual submissions. And the state of Texas "participated" by filing comments that made its position plain. Indeed, NRC acknowledged the state's position in its final environmental impact statement. 85 Fed. Reg. 27,447, 27,448 (May 8, 2020). The agency became well aware of the petitioners' concerns. Under *Water Transp.* and its progeny, Fasken and Texas should qualify for "party aggrieved" status.

Going back to the courts' presumption of judicial review of agency action, the presumption may be overcome "only on a showing of clear and convincing evidence of a contrary legislative intent." *Abbott Labs. v. Gardner,* 387 U.S. 136, 141, 87 S. Ct. 1507, 1511 (1967); *Traynor v. Turnage,* 485 U.S. 535, 542, 108 S. Ct. 1372, 1378 (1988); *see also Rhode Is. Dept. of Env. Mgmt. v. United States*, 304 F.3d 31, 41-42 (1st Cir. 2002). As the First Circuit also pointed out, requiring intervention for "party aggrieved" status is "circular…[t]he NRC cannot now claim that by refusing to grant the Commonwealth's requests to become a party, the NRC's decisions are beyond review." *Massachusetts,* 878 F.2d at 1520.

We acknowledge that the D.C. Circuit and Tenth Circuit have counterintuitively adopted NRC's circular position.[2] This panel's position, however, relies on the above citations from the D.C. Circuit and other courts.

_____

[2] *See, e.g., Ohio Nuclear-Free Network v. NRC,* 53 F.4th 236, 239 (D.C. Cir. 2022); *NRDC v NRC,* 823 F.3d 641, 643 (D.C. Cir. 2016); *State ex rel. Balderas v NRC,* 59 F.4th 1112, 1117 (10th Cir. 2023). In *Balderas,* the court denied review to New Mexico, which had submitted comments only on the environmental impact statement issued after the licensure. That decision is distinguishable at least from Fasken's position.

The bottom line for Hobbs Act "party aggrieved" status is to participate in agency proceedings, which both Fasken and Texas did; federal courts should not be bound to defer to varying agency rules and procedures to interpret this singular statutory language—whose purpose after all is to facilitate judicial review. NRC admits that the panel correctly noted judicial consensus that the "degree of participation necessary to achieve party status varies according to the formality with which the proceeding is conducted." Federal Respondents' Pet. for Reh'g En Banc at 7. Consequently, according to the nature of the proceedings, the *fact* and *scope* of the petitioner's "participation" should be determinative for judicial review, not the NRC's denial of "participation" to Fasken. NRC's insistence on strict compliance with its intervention rules is rather bold, not only from the standpoint of eliminating judicial review, but also because NRC quotes the statute that the Commission "*shall* admit any such person as a party…" *Id.*

And to the point that this decision has "created" a circuit conflict, we disagree in part. These petitioners satisfy "party aggrieved" status under the numerous cases that apply a broader standard of "participation." There is no circuit conflict with such cases. The conflict here is with the *Balderas* decision's denial of New Mexico's standing to challenge the ISP license. Inasmuch as the conflict is about statutory standing to appeal, a finding of standing means that our court will perform its duty of judicial review.

In light of the split of authorities, is "party aggrieved" status an issue of overarching significance? Not at all. The Hobbs Act jurisdictional provision is rarely debated, as anyone trying to research this term will quickly ascertain. This is likely for a couple of reasons. First, much agency activity covered by the Hobbs Act is conducted in a closed circle of experts, lobbyists and lawyers well familiar with the rules and proclivities of the administrators; therefore, arguments over statutory standing seldom arise. Second, with

"participation" as the bottom line from a judicial standpoint,[3] which is also the baseline of D.C. court opinions (albeit with varying applications of the term), substantive judicial review occurs only where "parties" have actually "participated" in the challenged proceedings. Fasken and Texas were no strangers to NRC here. Indeed, the NWPA specifically required "consultation" with the states before siting of spent nuclear fuel may occur anywhere.[4] That provision as well should have garnered Texas "party aggrieved" status.

For these reasons, the panel decision is comfortably footed on statutory standing under the Hobbs Act.

### 2. The *Ultra Vires* Exception to the "Party Aggrieved" Requirement

Even if Texas and Fasken were not "parties aggrieved" under the Hobbs Act, the panel nevertheless had jurisdiction to hear their appeal. As explained in the opinion, this court has long recognized an exception to the "party aggrieved" requirement regarding challenges to the lawfulness of the agency's action. Texas and Fasken each argued that the NRC's actions were unauthorized either by the AEA or the NWPA. *Texas*, 78 F.4th at 839–40. Accordingly, the panel relied on the rule that "a person may appeal an agency action even if not a party to the original agency proceeding . . . if the agency

---

[3] D.C. court opinions also reasonably foreclose *de minimis* participation as a basis for Hobbs Act judicial review. *See ACA Int'l*, 885 F.3d at 711; *Water Transp. Ass'n*, 819 F.2d at 1192–93.

[4] 42 U.S.C. § 10155(d)(1)-(2) requires the Department of Energy to exercise very limited interim storage of spent nuclear fuel through "a cooperative agreement under which [the] *State…shall have the right* to participate in a process of consultation and cooperation")(emphasis added). Needless to say, no such consultation or cooperation occurred here.

action is attacked as exceeding [its] power" or if the appellant "challenges the constitutionality of the statute conferring authority on the agency." *Am. Trucking Associations, Inc. v. ICC*, 673 F.2d 82, 85 n.4 (5th Cir. 1982); *accord Wales Transp., Inc. v. ICC*, 728 F.2d 774, 776 n.1 (5th Cir. 1984).

Texas and Fasken challenged the lawfulness of the NRC's actions and the legality of the NRC's conduct. But this court's exception to the "party-aggrieved" requirement is criticized as a relic of ages past that perished in the early 1980s. Of course, the Supreme Court has not overruled our *ultra vires* exception, and this court has recognized its existence in at least two more recent cases. *See Baros v. Tex. Mexican Ry. Co.*, 400 F.3d 228, 238 n.24 (5th Cir. 2005) (noting other courts' disagreement); *Merchants Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 922 (5th Cir. 1993).[5]

Three reasons are posited to overrule *ultra vires* jurisdiction to review the statutory or constitutional basis for agency actions. First, it is contended that our court decisions crafted the rule based on cases that predate Congress's bringing the ICC within the ambit of the Hobbs Act. That is just wrong. *Wales* and *American Trucking* both postdate Hobbs Act review of ICC actions *and* cite the Hobbs Act. There is no ground to attribute our courts' decisions to judicial mistakes, and consequently, *Wales* and *American Trucking* can be reconciled as to both holdings.

Second, this court's *ultra vires* exception was not made out of whole cloth. A similar rule is acknowledged by the Supreme Court, this court, and

---

[5] To be sure, other courts have rejected applying *ultra vires* review in cases involving the Hobbs Act. *See Balderas*, 59 F.4th at 1123–24; *Nat'l Ass'n Of State Util. Consumer Advocates*, 457 F.3d at 1249; *Erie-Niagara Rail Steering Comm. v. Surface Transp. Bd.*, 167 F.3d 111, 112–13 (2d Cir. 1999); *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 799 F.2d 317, 334–35 (7th Cir. 1986).

our sister circuits in various contexts. *See, e.g., Leedom v. Kyne*, 358 U.S. 184, 190, 79 S. Ct. 180, 185 (1958) ("This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.");[6] *Kirby Corp.*, 109 F.3d at 269 (acknowledging "judicial review is proper under the rule set forth in *Kyne*, despite there being a statutory provision prohibiting such review, because the agency's challenged action is so contrary to the terms of the relevant statute that it necessitates judicial review independent of the review provisions of the relevant statute"); *see also, e.g., Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 233 (4th Cir. 2008) (recognizing there is "a nonstatutory exception to the [APA] § 704 finality requirement in cases in which agencies act outside the scope of their delegated powers and contrary to 'clear and mandatory' statutory prohibitions"); *Rhode Island Dep't of Envtl. Mgmt.*, 304 F.3d at 42 ("[E]ven after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*."); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1330–31 (D.C. Cir. 1996) ("The procurement power must be exercised consistently with the structure and purposes of the statute that delegates that power. . . . It does not follow, then, that the President's broad authority under the Procurement Act precludes judicial review of executive action for conformity with that statute—let alone review to determine whether that action violates another statute." (citation and quotations omitted)). Courts apply this exception for good reason. Indeed, "[w]ere such unauthorized [agency] actions to go unchecked, chaos would plainly result." *Dart*,

---

[6] The parties did not cite *Leedom,* and I agree that the Supreme Court clarified its application in *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 112 S. Ct. 459 (1991). Nonetheless, *Leedom* represents the principle that the Article III courts are not totally closed to plaintiffs who claim agency action has violated the agency's statutory mandate or the Constitution.

848 F.2d at 224. Thus, "[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Id.*

Third, two additional misconceptions should be dispelled. The first is that the *ultra vires* exception means no more than that an agency "got it wrong" per APA standards. *See Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 799 F.2d 317, 334-35 (7th Cir. 1986). That is plainly not what *Wales* and *American Trucking* stand for. Instead, and as the above cases demonstrate, the term literally refers to being "outside" the agency's power, *i.e.,* in defiance of the limits placed by Congress in the agency's governing statute or the Constitution. None of the cases cited above have misunderstood this term or misapplied the rule to challenges involving less than an absence of statutory or constitutional authority. The "got it wrong" criticism is misleading hyperbole. Second, we need not speculate about any limits on who can challenge agency action as *ultra vires,* because in this case there is no doubt whatsoever about the petitioners' Article III standing. Nor is there doubt that NRC's rejection of "party aggrieved" status, if that were to be decided, has denied them any other avenue of redress.

If ever there were a case in which an agency acted *ultra vires*, it should be this case. And these petitioners should have Hobbs Act standing to contest the NRC's illegal licensing.

STEPHEN A. HIGGINSON, *Circuit Judge*, joined by GRAVES, DOUGLAS, and RAMIREZ, *Circuit Judges*, dissenting from denial of rehearing en banc:

To hold that the Nuclear Regulatory Commission lacked authority to license private, away-from-reactor storage of spent nuclear fuel without a clear delegation from Congress, the panel disregarded a clear limitation that Congress imposed on our own authority.

Through the Hobbs Act, Congress provided for judicial review of a Nuclear Regulatory Commission "final order entered in any proceeding" under the Atomic Energy Act "for the granting, suspending, revoking, or amending of any license."  42 U.S.C. § 2239(b)(1), (a)(1)(A).  But, like challenges to all agency actions governed by the Hobbs Act, Congress limited jurisdiction to where "[a]ny party aggrieved by the final order" seeks judicial review of the order.  28 U.S.C. § 2344.  The panel erred when it ignored this limitation, deepening one circuit split that arose from our court's atextual dicta in a footnote over forty years ago and threatening to create another with new, troubling dicta of its own.

This exercise of jurisdiction has grave consequences for regulated entities' settled expectations and careful investments in costly, time-consuming agency proceedings, inviting spoilers to sidestep the avenues for participation that Congress carefully created to prevent this uncertainty.  *See* Amicus Nuclear Energy Institute Br. 4-7.  And it does so across a wide range of industries—including agriculture, transportation, development, and communications—because the Hobbs Act's exclusive jurisdiction provision governs actions taken by many agencies.  *See* 28 U.S.C. § 2342(1)–(7).

I.

This case concerns a license issued by the Commission to a private company, Interim Storage Partners, for operation of a temporary, away-from-reactor spent nuclear fuel storage facility in Andrews County, Texas.  Two

private entities—Permian Basin Land and Royalty Owners and for-profit oil and gas extraction organization Fasken Land and Minerals (collectively, "Fasken")—sought to intervene in the licensing proceeding but were denied. Their petitions for review in the D.C. Circuit of the orders denying intervention were either dismissed or denied. *Don't Waste Michigan v. NRC*, No. 21-1048, 2023 WL 395030, at *1–3 (D.C. Cir. Jan. 25, 2023) (per curiam). Texas never sought to intervene in the licensing proceeding. Instead, it sent letters to the Commission both during a public comment period on a draft environmental impact statement performed on the license and after Texas passed a law prohibiting storage of spent nuclear fuel.

Fasken and Texas petitioned for review of the license in this court and licensee Interim Storage Partners intervened. Texas argued, as relevant here, that the license should be vacated because the Commission does not have the authority to license private entities for temporary, away-from-reactor storage of spent nuclear fuel. The panel concluded that it had jurisdiction under the Hobbs Act, granted the petitions for review, and vacated the license. *Texas v. NRC*, 78 F.4th 827, 837–40, 844 (5th Cir. 2023).

The panel suggested that, while neither Fasken nor Texas were parties in the licensing proceeding that produced the challenged order, it may be that "participat[ion]—in some way—in the agency proceedings, which Texas did through comments and Fasken did by seeking intervention and filing contentions," was sufficient. *Id.* at 838. But the panel rested its assertion of jurisdiction on our court's "*ultra vires* exception to the party-aggrieved status requirement." *Id.* at 839. Under the exception, there are "'two rare instances' where a 'person may appeal an agency action even if not a party to the original agency proceeding'—(1) where 'the agency action is attacked as exceeding [its] power' and (2) where the person 'challenges the constitutionality of the statute conferring authority on the agency.'" *Id.* (quoting *Am. Trucking Ass'ns v. ICC*, 673 F.2d 82, 85 n.4 (5th Cir. 1982) (per

curiam)). The panel concluded that two of the challenges attacked the Commission as exceeding its power: Texas's argument that "the Commission lacks the statutory authority to license the facility" and Fasken's argument that "the Commission violated the National Environmental Policy Act and Administrative Procedure Act by allowing a licensing condition that violates the Nuclear Waste Policy Act." *Id.* at 839–40.

## II.

Lest troubling dicta again be elevated to binding precedent without examination, I write first to explain why the panel is wrong to suggest, without so holding, that Texas and Fasken might be "part[ies] aggrieved" under the plain text of the Hobbs Act. The panel intimates that requiring that a "party aggrieved" be a party to the underlying proceeding here would "impose an extra-textual gloss by requiring a degree of participation not contemplated in the plain text of the statute." *Id.* at 839. But giving effect to the words that Congress chose—and refusing to read in words that it did not choose—does no such thing.

The Hobbs Act's narrow, exclusive-jurisdiction provision limits review to those petitioners who are a "party aggrieved by the final order," 28 U.S.C. § 2344, in contrast with the broader judicial review provision of the Administrative Procedure Act under which a "person" "aggrieved by agency action" may petition for review, 5 U.S.C. § 702. I don't disagree that party status, because the Hobbs Act encompasses a variety of agency actions, turns on the nature of the agency proceedings. But in these proceedings the answer is clear. With the Atomic Energy Act, Congress carefully delineated the only process by which the Commission could make a "person" a "party" in the licensing proceeding context: "[T]he Commission shall grant a hearing upon the request of any person whose interest may be affected by the

proceeding, and shall admit any such person as a party to such proceeding." 42 U.S.C. § 2239(a)(1)(A).[1] Where the Commission denies a *person's* attempt to become a *party*—that is, where the Commission denies intervention—Congress provided for judicial review of that denial under the Hobbs Act. *Id.* § 2239(b)(1). Pursuant to this congressionally devised process, Fasken sought to become a party to the proceeding and, when the Commission denied intervention, obtained full review of that denial in the D.C. Circuit. *Don't Waste Michigan*, 2023 WL 395030, at *1–3. Texas never sought to become a party.

Without the answer that Congress supplied, the panel relied on what it guessed Congress intended as "the function of the 'party aggrieved' status requirement." *NRC*, 78 F.4th at 838. This put the panel in the more difficult position of attempting to discern what degree of participation in the agency proceeding was enough. *Id.* at 838–39. But no such inquiry is required here or even permitted because, in the context of Commission licensing proceedings, Congress has answered the question already.

### III.

The panel rested its assertion of jurisdiction, with neither merits endorsement nor analysis, on this court's judge-made, *ultra vires* exception to Congress's jurisdictional limitation. *Id.* at 839–40. Because courts have

---

[1] Indeed, Congress relied on the "person" versus "party" distinction throughout the Atomic Energy Act. For example, after the conclusion of certain licensing proceedings for the construction of plants, the Commission must publish a notice of intended operation before fuel is loaded into the plant so that "any person whose interest may be affected by operation of the plant, may within 60 days request the Commission to hold a hearing on whether" the construction complies with the license. *Id.* § 2239(a)(1)(B)(i). This distinction made by Congress contemplates that a person may not be party to a licensing proceeding for a plant's construction but may later challenge whether subsequent construction complies with the license.

"no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007), the exception should be eliminated.

This court, in dicta in a footnote over forty years ago, asserted that the Hobbs Act's "party aggrieved" requirement does not limit review where "the agency action is attacked as exceeding [its] power." *Am. Trucking Ass'ns*, 673 F.2d at 85 n.4 (internal quotation marks and citation omitted).[2] That assertion, though made in 1982, relied exclusively on Interstate Commerce Commission cases from 1968 and earlier—seven years before Congress brought judicial review of that body's orders within the ambit of the Hobbs Act. *See* Pub. L. No. 93-584, §§ 3, 4, 88 Stat. 1917 (1975). As the Second Circuit explained, the exception "rests upon" these "pre-1975 cases" "without any acknowledgment of the intervening change in governing procedure" and with "no compelling support for the proposition that, despite the plain statutory language to the contrary, such petitions remain valid today." *Erie-Niagara Rail Steering Comm. v. Surface. Transp. Bd.*, 167 F.3d 111, 112 (2d Cir. 1999) (per curiam).

No other circuit has adopted our court's exception to the Hobbs Act, and four circuits have rejected it. *Balderas v. NRC*, 59 F. 4th 1112, 1123–24 (10th Cir. 2023); *Nat'l Ass'n of State Util. Consumer Advocs. v. FCC*, 457 F.3d

---

[2] This was never explained as an outgrowth of the much narrower exception that the Supreme Court recognized in *Leedom v. Kyne*, 358 U.S. 184, 190 (1958). There, the Supreme Court explained that "the inference would be strong that Congress intended the statutory provisions governing . . . general jurisdiction . . . to control" where "there is no other means" to "protect and enforce" a "right" that Congress has created. *Id.* (internal quotation marks and citations omitted). But the Court has underscored that this narrow exception does not apply where there is a "meaningful and adequate opportunity for judicial review." *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991). Nor does it apply where Congress has spoken "clearly and directly" to judicial review. *Id.* at 44.

1238, 1249 (11th Cir. 2006) (Pryor, J.), *modified on other grounds on denial of reh'g*, 468 F.3d 1272 (11th Cir. 2006); *Erie-Niagara Rail Steering Comm.*, 167 F.3d at 112–13; *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 799 F.2d 317, 334–35 (7th Cir. 1986) (Easterbrook, J.). Indeed, the Tenth Circuit in *Balderas* rejected the exception when New Mexico invoked it to challenge the same license at issue here. 59 F. 4th at 1123–24. In the Seventh Circuit, Judge Easterbrook explained that our court's atextual exception reads out the "party" limitation that Congress imposed because "'exceeding the power' of the agency may be a synonym for 'wrong,' so that the statute then precludes review only when there is no reason for review anyway." *In re Chicago*, 799 F.2d at 335.

Parsing which merits arguments here fall under our court's *ultra vires* exception shows its unworkability—and the risk for judicial aggrandizement when courts can pick and choose when to abide by Congress's limits. The panel concluded that it had jurisdiction over Fasken's argument that "the Commission violated the National Environmental Policy Act and Administrative Procedure Act by allowing a licensing condition that violates the Nuclear Waste Policy Act" because the argument "centers on the contention that the Commission acted beyond its statutory authority by issuing a license with a condition expressly prohibited by the Nuclear Waste Policy Act." *NRC*, 78 F.4th at 840. But this asks judges to speculate about what a petitioner's challenges are *really* about to decide whether Congress's clear jurisdictional limitation on their power to hear cases *really* applies.

The panel concluded that it had jurisdiction over Texas's argument that "the Commission lacks the statutory authority to license the facility" because that argument "attacks the Commission for licensing a facility without the authority to do so under the Atomic Energy Act, and in conflict with the Nuclear Waste Policy Act." *Id.* at 839–40. The panel, however, determined that it lacked jurisdiction over Texas's arguments that "the

license issuance violated the Administrative Procedure Act" (unlike, inexplicably, Fasken's Administrative Procedure Act challenge) and the "National Environmental Policy Act by failing to assess the risks of a potential terrorist attack." *Id.* But why are these latter two not also "attack[s]" on the "agency action" as "exceeding [its] power"? *Am. Trucking Ass'ns*, 673 F.2d at 85 n.4. An agency exceeds its power whenever it violates the law. That includes when, for example, its action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Our exception reads out the difference, discussed above, that Congress created between broader judicial review under the Administrative Procedure Act and narrower judicial review under the Hobbs Act. And "[t]he merits of that policy are for the Congress rather than us to determine." *Simmons v. Interstate Commerce Comm'n*, 716 F.2d 40, 43 (D.C. Cir. 1983) (Scalia, J.).

\* \* \*

For these reasons, I respectfully dissent from denial of rehearing en banc.